GRANT, Senior District Judge.
This appeal arises from an order of the United States District Court for the Western District of Wisconsin. The court’s jurisdiction is invoked pursuant to 28 U.S.C. § 1291. The order under review, entered 4 May 1977, denied the claim of Thomas R. Israel, as Warden of the Wisconsin State Prison, and then Defendant Manuel Carballo against the United States of America and the United States Marshal’s Service for the cost of transporting and guarding Jesse James Ford from the Wisconsin State Prison at Waupun, Wisconsin, to the Federal Building in Milwaukee, Wisconsin. Because the order was ancillary to a judgment previously entered in favor of Israel, Carballo, and others, no judgment based on the 4 May 1977 order was entered. Thus, the 4 May 1977 order was a final decision for appeal purposes. See Abney v. United States, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977).
Jesse James Ford III and Marvin Louis Madden commenced a civil rights action in the United States District Court for the Western District of Wisconsin challenging certain past acts by prison administrators and additionally seeking injunctive relief. Wilbur J. Schmidt and Ramon L. Gray were defendants only in the claim for monetary damages because they had subsequently left state employment. Manuel Carballo and Thomas R. Israel were defendants in the claim for injunctive relief because they were then holding the positions previously held by Schmidt and Gray.
The suit was tried on 7 January 1977. Prior thereto, on 3 January 1977, the District Court had issued a writ of habeas corpus ad prosequendum directing both the United States Marshal for the Eastern District of Wisconsin and Thomas R. Israel, as Warden of the Wisconsin State Prison, to:
[H]ave the body of Jesse James Ford III, now detained at the Wisconsin State Prison at Waupun, Wisconsin, in their custody under safe and secure conduct at Room 225, Federal Building, 517 East Wisconsin Avenue, Milwaukee, Wisconsin, commencing on Friday, January 7, 1977, at 10:00 AM for the purposes of trial.
It is further ordered that at the completion of said proceeding, the above named warden and marshal return the prisoner to said institution under safe and secure conduct and have then and there this writ.
When the Marshal served the writ on Warden Israel, the Warden’s designee was *406 told that the United States Marshal would not transport Jesse James Ford. The Warden responded to the writ, produced Ford, and maintained custody and control of Ford throughout the trial.
The United States Marshal, through the United States Attorney, had moved to modify the above-described writ. However, until 4 May 1977, the motion to modify had not been resolved. Thus, the writ was still in effect when the trial began on 7 January 1977.
After trial, the State Warden submitted his claim to the Marshal for reimbursement for the cost of transporting and guarding Ford during the trial. The United States Attorney, on behalf of the United States, responded to the claim and the District Court, on 4 May 1977, denied the claim of the Warden on the grounds that Moeck v. Zajackowski, 541 F.2d 177 (7th Cir. 1976), had previously held that a state is not entitled to reimbursement for its expenses in transporting a state prisoner to and from federal court. We disagree.
The sole issue presented by this appeal is whether the State of Wisconsin should be recompensed for its expenses in transporting and supervising the attendance of a state prisoner at a federal civil proceeding. In Moeck v. Zajackowski, supra, this court was faced with the question of whether a lawfully incarcerated state prisoner is entitled to be present at the trial of an action unrelated to the terms of his confinement. 541 F.2d at 178. As was stated there:
We find no support in the Constitution or in judicial precedent for the proposition that a prison inmate has a fundamental interest in being present at the trial of a civil action to which he is a party, sufficient to outweigh, as a matter of course, the interest of the state in avoiding expense. The due process requirements of the Fifth and Fourteenth Amendments which guarantee access to the courts, do not grant a prisoner the right to attend court in order to carry on the civil proceedings which he initiates.
Id. at 180.
While it was suggested that the decision whether a state prisoner’s presence in federal court would be necessary is a discretionary one, the court concluded that:
[I]n the instant case it is not necessary to decide that a prisoner’s right of access to the courts includes a right to be present at the trial of his civil action not involving the grounds for nor the conditions of his imprisonment.
This follows because it appears that the state [Wisconsin] is granting more favorable treatment to prisoners with civil actions in a state court than to prisoners with civil actions in a federal court, and we find no rational basis for the difference.
Sections 292.44 and 292.45, Wis.Stats. (1971), provide for the appearance of a prisoner as a witness and for reimbursement of the institution out of county funds for the expenses incidental to the transportation of the prisoner.
Id. at 181.
Under Wisconsin state law, the Warden would transport an inmate to any state court once the judge had decided his presence was necessary. As a result, this court held that, “[T]he state’s refusal to transport a prisoner to federal court on the same basis as to a state court is a denial of equal protection of the laws.” Id. at 182.
Thus, at the very least, Moeck established that where a state statutory mechanism existed by which provisions were made for the transportation and supervision of state prisoners to state courts, when a federal court determined that a need existed for the presence of a state prisoner, equal protection of the laws would demand that similar transportation and supervision be provided. What we are faced with today, (a question not directly determined by Moeck), is whether, in a situation where these services have been provided, the state has a right to be reimbursed for its reasonable expenses.
*407 Initially, we should point out that the writ of habeas corpus ad prosequendum,[1] issued by the District Court in this case, directed both the Marshal and the Warden to produce the body of Jesse Ford for the purpose of trial. We do not decide today whether the specific wording of the writ intended to place this burden upon the Warden and the Marshal equally, separately, or in some cooperative fashion. We do note, however, and consider it a serious matter, that the Marshal decided that all that was necessary on his part was to notify the Warden that the Marshal’s Service would not transport the prisoner. Although a motion to modify the writ had been filed, that motion had not been ruled upon at the time of trial and 28 U.S.C. § 569(b) clearly required that the Marshal execute the writ. The fact that a controversy may have existed as to who should actually transport and suffer the expense of producing the prisoner had no effect upon the existing writ and did not authorize the Marshal to independently disregard a direct order of the court.
Turning to the central issue of whether the Warden was entitled to be reimbursed, the writ issued by the District Court had as its basis the All Writs Act which provides, in part, that:
The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.
28 U.S.C. § 1651(a).
The Act was originally enacted as part of § 14 of the Judiciary Act of 1789. Because federal courts are courts of limited jurisdiction, the various historic common-law writs, and now § 1651, provide these courts with the procedural tools necessary to exercise their limited jurisdiction. It has long been recognized that a federal court may use all of the auxiliary writs to aid in the performance of its duties when their use is directed toward achieving the ends of justice entrusted to it. Adams v. United States, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942). The Act has consistently been applied flexibly in conformity with these principles.
The recent case of United States v. New York Telephone Co., 434 U.S. 159, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977), is instructive in this regard; The Court there held that a District Court had the power, pursuant to the All Writs Act, to order a telephone utility to assist with the installation and use of pen registers which would record the numbers dialed by a phone believed to be in use for an illegal purpose, 98 S.Ct. at 372. In reaching this conclusion, the Court touched upon principles directly relevant to the case presently before us. The Supreme Court first noted that the Court of Appeals had been concerned that sustaining the District Court’s order might authorize courts to compel third parties to render assistance without limitation and regardless of the burden involved. Id. at 372. Indeed, the Second Circuit had reasoned that even assuming the District Court’s broad discretionary authority under the All Writs Act, it would require a determination on balance, as to whether the exercise of that power by the court below constituted an abuse of discretion. Application of United States in Matter of an Order Authorizing Use of Pen Register, 538 F.2d 956 (2nd Cir. 1976). The Supreme Court echoed this analysis in what we consider to be clear and controlling language when it stated, “We agree that the power of federal courts to impose duties upon third parties is not without limits; unreasonable burdens may not be imposed.” 98 S.Ct. at 372. Finally, in evaluating the order entered by the District Court, the Supreme Court stated, “Nor was the District Court’s order in any way burdensome. The order provided that the Company be fully reimbursed at prevailing rates, and compliance with it required minimal effort on the part of the Company and no disruption to its operations.” Id. at 373.
*408 United States v. New York Telephone Co. can, of course, be distinguished on the merits from the case currently before us. But, that does not mean we cannot learn from the analysis applied. One lesson that emerges is that the issuance of a writ is not an absolute matter without limitation. The Court has made clear that a federal court may impose duties upon third parties only when they do not present unreasonable burdens.
While we do not decide to what extent federal interests are vindicated when a writ requiring production of a state prisoner is issued, it seems beyond doubt to us that the interest of the state is minimal. The state’s only real relationship to the federal proceeding is the fact that it has custody over the particular plaintiff. On the other hand, the state has documented well the burden that transporting a prisoner presents in terms of allocation of staff and financial resources. As a result, we feel that, whereas Moeck created the duty upon the Warden to produce a state prisoner in federal court upon the issuance of a proper writ, to additionally require that this be done at the state’s own expense would present an unreasonable burden. We conclude, therefore, that the District Court properly issued the writ ordering the production of the plaintiff, Jesse Ford, but that it was an abuse of discretion to later refuse the state’s request for reimbursement of the costs in carrying out that order. Accordingly, we reverse and remand this case for a determination as to what are reasonable expenses in this case and for further proceedings consistent with this opinion.
REVERSED AND REMANDED.

. Although the writ issued by the District Court was a writ of habeas corpus ad prose-quendum, its function was really that of a writ of habeas corpus ad testificandum because its object was to have the desired witness brought into court to give testimony. Gilmore v. United States, 129 F.2d 199 (10th Cir. 1942).