**Charles J. JACKSON, Plaintiff,**

v.

**Ron MOWERY, Grant County Sheriff, Defendant.**

**Civ. No. F 87–251.**

United States District Court, N.D. Indiana, Fort Wayne Division.

July 24, 1990.

Charles L. Jackson, pro se.

Michael Morow, James S. Stephenson, Stephenson & Kurnik, Indianapolis, Ind., for defendant.

### ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on defendant's motion for judgment on the pleadings or, in the alternative, summary judgment, pursuant to Rules 12 and 56 respectively of the Federal Rules of Civil Procedure. Defendant, Grant County Sheriff Ron Mowery, filed the motion on December 30, 1988. Plaintiff, Charles Jackson, filed his response *pro se* on May 9, 1990. Defendant submitted a reply on May 14, 1990. For the reasons set forth below, defendant's motion for judgment on the pleadings will be denied, and his motion for summary judgment will be granted.

Petitioner is proceeding *pro se.* *Pro se* pleadings are to be liberally construed. *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). The district court's role is to ensure that the claims of *pro se* litigants are given "fair and meaningful consideration." *Matzker v. Herr,* 748 F.2d 1142, 1146 (7th Cir.1984); *Caruth v. Pinkney,* 683 F.2d 1044, 1050 (7th Cir.1982). This court also recognizes that federal courts have historically exercised great tolerance to ensure that an impartial forum remains available to plaintiffs invoking the jurisdiction of the court without the guidance of trained counsel. *Pro se* motions and complaints such as the petitioner's are held to less stringent pleading requirements; rigor in the examination of such motions, complaints and pleadings is inappropriate.

### *Judgment on the Pleadings*

In deciding a motion to dismiss for failure to state a claim, this court must take the well pleaded factual allegations of the plaintiff's complaint as true. *Ashbrook v.*

*Hoffman,* 617 F.2d 474 (7th Cir.1980). The complaint must be considered in the light most favorable to the plaintiff and every doubt must be resolved in the plaintiff's favor. *Henry C. Beck Co. v. Fort Wayne Structural Steel,* 701 F.2d 1221 (7th Cir. 1983). Dismissal is improper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Strauss v. City of Chicago,* 760 F.2d 765, 767 (7th Cir.1985) (quoting *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Nonetheless, a complaint "must state either direct or inferential allegations concerning all of the material elements necessary for recovery under the relevant legal theory." *Papapetropoulous v. Milwaukee Transport Services, Inc.,* 795 F.2d 591, 594 (7th Cir.1986). "The heavy costs of modern federal litigation ... counsel against launching the parties into pre-trial discovery if there is no reasonable prospect that the plaintiff can make out a cause of action from the events narrated in the complaint." *Sutliff, Inc. v. Donovan Companies, Inc.,* 727 F.2d 648, 654 (7th Cir.1984). "A complaint may be dismissed for failure to state a claim only if the plaintiff can prove no set of facts upon which relief may be granted." *First Interstate Bank of Nevada v. Chapman & Cutler,* 837 F.2d 775, 776 (7th Cir.1988).

Defendant Mowery contends that judgment on the pleadings is appropriate because the complaint fails to state any cause of action for damages. According to defendant, plaintiff Jackson is merely requesting injunctive relief, in which case the issues presented before the court in this action would be moot since Jackson is no longer incarcerated at the Grant County Jail. *Kincaid v. Duckworth,* 689 F.2d 702 (7th Cir.), *cert. denied,* 461 U.S. 946, 103 S.Ct. 2126, 77 L.Ed.2d 1305 (1982).

However, the complaint clearly makes a request for damages in addition to a request for injunctive relief, particularly under the liberal *pro se* standards set forth in *Haines v. Kerner, supra,* where plaintiff asserts that he is entitled to "reimbursement compensation" and "punitive dam-

ages." As such, plaintiff's § 1983 claims are not moot. *Id.* Although plaintiff does not specify an amount of damages other than in his response to this motion, no specific amount is required in the complaint to make it sufficient. On the foregoing grounds, defendant's motion for judgment on the pleadings is denied.

### Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* 106 S.Ct. at 2512; *Valentine v. Joliet Tp. High School Dist. No. 204,* 802 F.2d 981, 986 (7th Cir.1986).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which demonstrate the absence of a genuine issue of material fact, *Celotex,* 106 S.Ct. at 2553. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.), cert. denied, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson,* 106 S.Ct. at 2511.

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Id.* at 2510. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. Fed.R.Civ.P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 106 S.Ct. at 2512.

### Discussion

In its Order of September 4, 1987, this Court found two issues remaining from the many allegations made in plaintiff's complaint. Both were claims brought under 42 U.S.C. § 1983. Plaintiff Jackson first alleges that Sheriff Mowery denied him his right to marry as an inmate. In his second claim plaintiff alleges that the sheriff was responsible for opening, reading, and generally interfering with his mail.

### A. Denial of Inmate's Right to Marry

■ In response to plaintiff's allegation of denial of his request to marry, defendant Mowery pleads the affirmative defense of qualified immunity. Mowery con-

tends that he received no request to marry from Jackson but that, even if Jackson had made such a formal request, his right to marry as an inmate was not yet clearly established enough to give Sheriff Mowery sufficient notice that a denial of such a request was in violation of the law. Although there is a factual dispute between the parties regarding whether Jackson ever made a request to marry to the sheriff, there is no dispute that any such requests would have been made prior to date of the Supreme Court decision in *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), establishing for the first time a right to marry for inmates. Thus, defendant is entitled to qualified immunity.

■ The Supreme Court has recognized that state officials are entitled to qualified immunity if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "[T]he test for immunity should be whether the law was clear in relation to the specific facts confronting the public official when he acted." *Colaizzi v. Walker,* 812 F.2d 304, 308 (7th Cir.1987). "Once the defendant's actions are defined or characterized according to the specific facts of the case this characterization is compared to the body of law existing at the time of the alleged violation to determine if constitutional, statutory, or case law shows that the now specifically defined actions violated the clearly established law." *Rakovich v. Wade,* 850 F.2d 1180, 1209 (7th Cir.1988). There is no qualified immunity if the defendant violated a clearly established and well litigated general proposition in which the case at hand merely presents a new wrinkle. *LeClair v. Hart,* 800 F.2d 692, 696 (7th Cir.1986) (citing *People of Three Mile Island v. Nuclear Regulatory Commissioners,* 747 F.2d 139, 148 (3d Cir.1984)).

The Supreme Court firmly established an inmate's right to marry for the first time in *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Prior to that decision, the Court had established the right to marry as implicit in the Constitution, *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967), *Zablocki v. Redhail,* 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1976), but the applicability of this right in the prison context was never directly addressed until *Turner.* Cases such as *Butler v. Wilson,* 415 U.S. 953, 94 S.Ct. 1479, 39 L.Ed.2d 569 (1974), summarily affirming *Johnson v. Rockefeller,* 365 F.Supp. 377 (S.D.N.Y.1973), cast doubt on the existence of a right to marry for inmates. In *Johnson* and *Butler* the courts upheld a prohibition on marriage for inmates sentenced to life imprisonment; denial of the right to marry was part of their punishment.

The very nature of an inmate marriage was also unusual enough to raise serious questions about the existence of a right to marry for inmates. In *Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974), the Court held that an inmate retains only those constitutional "rights that are not inconsistent with his status as a prisoner with the legitimate penological objectives of the corrections system." The place of the right to marry in the prison context was understandably unclear in view of the isolated nature of prison life in which inmates would be separated night and day from their spouses. However, the Court found in *Turner, supra,* that "inmate marriages, like others, are expressions of emotional support and public commitment" as well as religious faith and personal dedication and, as such, should remain unaffected by the fact of confinement. The Court went on to state that opportunities for parole and commutation would allow prisoners to consummate their marriages in the future. The Court also observed that marital status is often a precondition to the receipt of government benefits, property rights, and other less tangible benefits. These factors taken together, the Court concluded that the Constitution protects the marital relationship even in the prison context. *Id.* 107 S.Ct. at 2254.

The *Turner* decision came down on June 1, 1987. Grant County Jail records, signed by Jackson, show that he was last incarcer-

ated at that jail on May 7, 1987, when he was then transferred to the Indiana State Reformatory in Pendleton. (Mowery Affidavit, Exhibit B). Furthermore, Jackson admits in his answers to defendant's interrogatories that any requests to marry which he might have made to defendant were submitted before the June 1 decision. (Answer to Interrogatory One). Since there is no post-*Turner* issue of fact concerning a denial of plaintiff's right to marry, defendant's affirmative defense of qualified immunity must succeed.

### B. *Interference with Inmate's Mail*

Plaintiff contends that Grant County Jail officials unconstitutionally interfered with his incoming and outgoing mail. Jackson claims that he never received money which was sent to him through the mail. More importantly, Jackson alleges that jail officials opened and read his mail outside of his presence.

■ Jackson provides no testimony supporting any of these allegations. With regard to the opening of his mail, Jackson refers to defendant's affidavit by Karen Jones, a jailer testifying for defendant, who recalls only one occasion on which she delivered opened mail to Jackson, and even then it appeared to be the result of poor gluing of the envelope. (Answer to Interrogatory Six and Jones Affidavit at 1).

With regard to the alleged confiscation of money mailed to him, Jackson signed a form upon his release from the Grant County Jail signifying that he had received any and all personal items previously held by the jail—including cash. (Mowery Affidavit, Exhibit B).

With regard to both of these allegations Jackson fails to provide sufficient evidence on which a jury could reasonably conclude that defendant Mowery was personally involved and, in turn, legally responsible for the alleged violations. On this basis, defendant's motion for summary judgment will be granted.

■ Although it is clear that inmates have no right to unlimited free access to the mails, the extent of the limited rights which prisoners do retain is not entirely clear, as the Supreme Court candidly recognized in *Wolff v. McDonnell*, 418 U.S. 539, 576, 94 S.Ct. 2963, 2984, 41 L.Ed.2d 935 (1974). Generally, where direct infringement of constitutional rights is involved, as with mail censorship, limitations on prisoners' rights are valid only to the extent that they are reasonably related to legitimate penological interests such as security, order, and rehabilitation. *Turner v. Safley*, 107 S.Ct. at 2261; *Ford v. Schmidt*, 577 F.2d 408 (7th Cir.1978), *cert. denied*, 439 U.S. 870, 99 S.Ct. 199, 58 L.Ed.2d 181. The Seventh Circuit has recognized that control of mail going to and from inmates is an important part of the maintenance of discipline in prisons. *Ortega v. Ragen*, 216 F.2d 561 (7th Cir.1954), *cert. denied*, 349 U.S. 940, 75 S.Ct. 786, 99 L.Ed. 1268. However, limitations on the right to send and receive information must be no broader than necessary to promote the government's interest. *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977). The prison must employ the least restrictive means of serving that interest. *Procunier v. Martinez*, 416 U.S. 396, 413, 94 S.Ct. 1800, 1811, 40 L.Ed.2d 224 (1974). The burden of proving the existence of such an interest rests on the prison officials. *Rios v. Lane*, 812 F.2d 1032, 1036 (7th Cir.1987); *Aikens v. Jenkins*, 534 F.2d 751 (7th Cir.1976). Of course, prison officials are accorded deference in the adoption and execution of policies and practices which are needed to preserve order and maintain security. *Pell v. Procunier*, 417 U.S. 817, 825–26, 94 S.Ct. 2800, 2805–06, 41 L.Ed.2d 495 (1974); *Martinez*, 416 U.S. at 414, 94 S.Ct. at 1811.

■ Jackson does not allege that his mail was censored. Rather, he asserts that mail sent from and to him arrived preopened, and based on this he alleges that prison officials read his mail. With regard to general correspondence, however, freedom from unwarranted censorship does not imply freedom from inspection or perusal. *Wolff v. McDonnell*, 418 U.S. at 576, 94 S.Ct. at 2984. In fact, inspection seems to

be a necessary step toward discovering whether a piece of mail may be censored within constitutional limits. Thus, Jackson's allegations that his general mail was pre-opened lack any legal foundation on which to proceed.

However, with regard to legal correspondence, Jackson's mail rights are more expansive. The Supreme Court has acknowledged that the Sixth Amendment protects the attorney-client relationship from intrusion in the criminal setting. *Wolff v. McDonnell*, 418 U.S. at 576, 94 S.Ct. at 2984. The Seventh Circuit has viewed this protection as a development stemming from an inmate's fundamental right to unfettered access to the courts, without which all other rights of an inmate are illusory. In conjunction with the Sixth Amendment, this right evolved into one of non-interference by prison officials

> with postal communications between an inmate and his counsel which relate to the legality of either his criminal conviction or the condition of his incarceration ... even where the lawyer is not the counsel of record.... The final phase of this development has been a recognition that ... the traditional privacy of the lawyer-client relationship [should] be implemented in the prison context. Thus there has been widespread agreement that communications by post between an inmate and his attorney are sacrosanct, subject only to tests on incoming mail for the presence of contraband which fall short of opening it when the inmate is not present.

*Adams v. Carlson*, 488 F.2d 619 (7th Cir. 1973).

 Thus, the reading of an inmate's legal mail by prison officials falls outside the scope of constitutionally permissible activities. The protection afforded legal mail is not jeopardized, however, when prison officials simply open it in the presence of the inmate to check for contraband because "the inmate's presence insures that prison officials will not read the mail." *Wolff v. McDonnell*, 418 U.S. at 577, 94 S.Ct. at 2985. Accordingly, the extent of an inmate's right to confidentiali-

ty of legal mail is such that, if "legal mail is suspected of containing contraband that mail must be opened in the presence of the inmate." *Hendrix v. Faulkner*, 525 F.Supp. 435 (N.D.Ind.1981). However, prison officials may require that all legal mail be clearly marked as such before receiving special treatment. *Wolff,* 418 U.S. at 576, 94 S.Ct. at 2984.

 Although much of the language defining this constitutional right refers to "legal mail" as a general term, it is important to remember that the origin of this right lies in the attorney-client privilege. Thus, in *Wolff, supra,* the Court repeatedly referred to "mail from attorneys" when discussing the right to confidentiality of legal mail. 418 U.S. at 576–577, 94 S.Ct. at 2984–2985. Accordingly, the legal mail protected by the Constitution extends only to safeguard communications between an inmate and his attorney, and Jackson has no basis for his claim of interference with "legal mail" to and from his family and friends.

Plaintiff claims that "all legal mail was pre-opened." (Answer to Interrogatory Six). Assuming his contention to be true, it must be remembered that plaintiff is suing only the Sheriff of Grant County in his official capacity. Thus, Jackson must show not only that his legal mail rights were violated but also that the sheriff is legally responsible for any such violations.

 Generally, the doctrine of respondeat superior does not apply to 42 U.S.C. § 1983 claims. *Adams v. Pate*, 445 F.2d 105, 107 (7th Cir.1971); *Zingmond v. Harger*, 602 F.Supp. 256, 261 (N.D.Ind. 1985). The plaintiff must allege more than mere negligence on the part of the defendant; personal involvement by the defendant in the illegal acts is required before damages can be awarded under § 1983. *McDonald v. Illinois*, 557 F.2d 596, 601–02 (7th Cir.1977).

In his affidavit, defendant Mowery states that he never read any of Jackson's mail, including "any correspondence directed to an attorney, court or legal services organization." (Mowery Affidavit at 5). Defendant also claims that he has "never

been involved at any time with either the distribution or opening of Charles Jackson's mail." (Mowery Affidavit at 4).

Jackson does not explicitly contend that Sheriff Mowery was personally interfering with his mail. In fact, regarding his incoming mail, Jackson alleges that the deputies—not the sheriff—were responsible for the violation of his mail rights:

> Well the jail staff hands out all mails! They bring the mail up to the cell blocks and open it in front of us through the bars! The jailers handle this delicate job; the deputies don't because it is my beliefe [sic] that they are responsible for going in peoples [sic] mail! (Answer to Interrogatory Six).

Jackson may even be contending that the deputies were responsible for interfering with all mail, both incoming and outgoing, which would relieve the defendant of any legal accountability for the mail violations alleged in this suit. Of course, the standards for summary judgment dictate that all inferences be drawn in favor of Jackson, the non-moving party. However, even under these standards Jackson fails to provide enough evidence regarding his outgoing mail to show that a jury could reasonably find the sheriff responsible for any mail violations.

Although Jackson states several times that his mail rights were violated and that his incoming and outgoing mail was opened, he attempts only once to connect the sheriff with the alleged unconstitutional acts. Jackson states that on one occasion, after Jackson had "sent legal motions and so forth to the legal services [sic] of Ind.," the sheriff "went off" on him and said that Jackson "had a lot of nerves [sic] to try and sue him by writing the Central Legal Services." Jackson concludes that the sheriff "just could'nt [sic] have knew [sic] what I said without reading my mail." (Answer to Interrogatory Seven). This conclusion is tenuous at best and fails to meet even the lowest standards for denying summary judgment. Several alternative and certainly more probable explanations exist for defendant's alleged behavior other than concluding that he had read plaintiff's mail. Only through pure speculation could a jury find from this single incident that defendant was personally involved in any unconstitutional handling of Jackson's legal mail.

Jackson provides no other specific facts to show that there is a genuine issue for trial concerning Sheriff Mowery's legal responsibility for any of the alleged mail violations. Thus, defendant's motion for summary judgment is granted.

*Conclusion*

For the foregoing reasons, defendant's motion for summary judgment is hereby GRANTED.