Timothy **ANDERSON**, Plaintiff,

v.

Patrick **FIEDLER**, et al., Defendants.

No. 92–C–568.

United States District Court,
E.D. Wisconsin.

Aug. 18, 1992.

Timothy Anderson, pro se.

No appearances for defendants.

## DECISION AND ORDER

MYRON L. GORDON, Senior District Judge.

Timothy Anderson, incarcerated at the Oshkosh Correctional Institution, seeks redress from prison officials who allegedly confiscated $150 in United States currency found in his possession. He commenced this action by filing the following materials: (1) a "Notice of Writ of Habeas Corpus–Writ of Mandamus Pursuant to the Appropriately Respective Statutes Coupled under and with USC. Title 42, § 1983 and 1985," which includes a section entitled "Plaintiff–Petitioner's Memo–Brief & Addendum of Law in Support of this Action"; (2) a "Petition and Affidavit for Leave to Proceed In Forma Pauperis"; (3) a "State of Wisconsin Notice of Injury and Claim"; (4) a "Memorandum" to Patrick Fiedler, Secretary of the Wisconsin Department of Corrections; and (5) a "Notice of Motion for an Order Waiving of the Marshall's [sic] Service."

Upon examination of the above materials, the court is satisfied that Mr. Anderson does not raise any claim that may be construed as a challenge to the lawfulness of his custody cognizable as a petition for a writ of habeas corpus. *See* 28 U.S.C. § 2254. Consequently, the court has construed the "Notice of Writ of Habeas Corpus ..." simply as a complaint intended to commence a civil action seeking redress under § 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983. Because Mr. Anderson has not paid the requisite $120 filing fee to commence a civil action, the court must examine Mr. Anderson's entitlement to proceed in forma pauperis.

■ In order to authorize a litigant to proceed in forma pauperis, the court must make two determinations: first, whether the litigant is unable to pay the costs of commencing the action; and second, whether the action is frivolous or malicious. 28 U.S.C. §§ 1915(a) and (d). The court is obliged to give Mr. Anderson's pro se allegations, however inartfully pleaded, a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972).

Mr. Anderson's supporting affidavit demonstrates that he is unable to pay the costs of commencing this action (although he might have been had prison officials not confiscated his cash). Accordingly, the court finds that Mr. Anderson has satisfied the requirements of § 1915(a).

■ The next question is whether Mr. Anderson has met the requirements of § 1915(d). An action is frivolous, for purposes of § 1915(d), if there is no arguable basis for relief either in law or in fact. *Denton v. Hernandez*, —— U.S. ——, ——, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831, 104 L.Ed.2d 338 (1989). To meet the requirements of § 1915(d), Mr. Anderson must assert at least an arguable violation of his constitutional rights actionable under 42 U.S.C. § 1983.

The factual substance of Mr. Anderson's statement of claim is unusually cryptic. He alleges simply that in March or April 1991 (he does not provide the exact date), while incarcerated at Oshkosh, prison officials confiscated $150 in cash then in his possession. He asserts that he "lawfully received" the money "from an outside source." He also asserts that "the property in question ... [the $150 in cash] ... has never been judicially declared contraband," and that his "rights" have been "violated and raped." Examination of the supplementary materials filed by Mr. Anderson with the court discloses that he was charged in a conduct report (# 471665) with "unauthorized transfer of property" in violation of Wis.Admin.Code § DOC 303.40 (Apr. 1990). It is not clear whether the conduct report was issued in conjunction with the confiscation of the money.

An examination of Wisconsin law discloses no explicit *statutory* authority entitling prison officials to confiscate money found in the possession of inmates. Mr. Anderson complains that the confiscation was unlawful because his money was not "judicially declared contraband." However, the absence of either direct statutory or judicial authority for the confiscation does not necessarily render the confiscation illegal. The Wisconsin legislature has granted the Secretary of the Department of Corrections the authority to promulgate rules and regulations governing the conduct of persons (such as prison inmates) under the command of that department. *See* Wis.Stat. § 15.14 (1989–90). In the exercise of that authority, the Secretary has promulgated such regulations. Those regulations are published in the Wisconsin Administrative Code [the Code].

Not surprisingly, under various provisions of the Code relating to the Department of Corrections, inmates in a Wisconsin correctional institution who possess money are subject to various penalties and punishments. Money (like intoxicants, drug paraphernalia, and weapons) is designated as "contraband": an item that "inmates may not knowingly possess." Wis.Admin.Code § DOC 303.10 (Apr. 1990). Specifically, "any inmate who knowingly has in his or her possession ... coins or paper money" is guilty of an offense.

Wis.Admin.Code § DOC 303.42(a) (Apr. 1990). Moreover, the Code authorizes the *summary* seizure and disposal of contraband, which by definition includes money, found in the possession of inmates:

(2) SEIZURE. Any staff member who reasonably believes that an item is contraband may seize the item, whether or not the staff member believes a violation of ss. DOC 303.42 to 303.47 has occurred. Items seized shall be sent to the security director, accompanied by the conduct report if there is one. If there is not, the item shall be accompanied by a written report. Property which is not contraband shall be returned to the owner or disposed of in accordance with this section.

(3) DISPOSITION. If a conduct report is written, the disposal of the item shall be decided by the hearing officer or committee at the disciplinary hearing. If there is no conduct report, the security director may dispose of seized items. Disposal should be as follows:

(a) Currency (money). All confiscated currency shall be placed in the state's general fund....

Wis.Admin.Code § DOC 303.10 (Apr. 1990). Thus, where no conduct report is written on the inmate possessing the money, § DOC 303.10 makes no provision for a hearing at any time—before or after the money has been seized.

It will be assumed, although it is not readily apparent from Mr. Anderson's filings, that the prison officials do not intend to return the money. It will also be assumed, given the absence of any allegation to the contrary, that the prison officials acted as authorized by the applicable prison regulations. The complaint does not suggest, nor is there any reason to believe, that these officials confiscated the money in a random or unauthorized fashion to supplement their own incomes. Finally, it is further assumed that Mr. Anderson will not receive a hearing by prison officials regarding his allegation that prison officials deprived him of his $150 unlawfully.

■ Taking into account the above assumptions which are necessary because of Mr. Anderson's enigmatic complaint, the literal gist of Mr. Anderson's claim appears to be that prison officials intentionally deprived him of property without due process of law—conduct that would be actionable under the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983. As the court construes the claim, Mr. Anderson believes that the manner in which he and his money were parted—by summary seizure without a hearing ("forfeiture" to use his word)—did not comport with the requirements of the due process clause of the federal Constitution. In evaluating Mr. Anderson's federal constitutional claim, the court need not address the issue as to whether the defendants violated state law. *Tavarez v. O'Malley*, 826 F.2d 671, 677 (7th Cir.1987) ("the function of section 1983 is to redress violations of federal, not state, law").

Unquestionably, money poses a unique security threat inside a prison. The reasons why it is undesirable to have money circulating inside a prison are numerous. Money may operate to facilitate illegal services such as gambling or prostitution; it may be used to bribe guards or prison employees; it stands to foster escape plans; it may serve to promote trafficking in drugs, weapons, or other contraband; it may invite theft; or it might place the inmate at risk of attack. *See Sullivan v. Ford*, 609 F.2d 197, 198 (5th Cir.1980), *cert. denied*, 446 U.S. 969, 100 S.Ct. 2950, 64 L.Ed.2d 829 (1980); *Hendrix v. Evans*, 715 F.Supp. 897, 912 (N.D.Ind.1989); *Lowery v. Cuyler*, 521 F.Supp. 430, 433 n. 9 (E.D.Pa. 1981). In short, "[l]arge caches of currency in a prison serve no useful purpose and pose a significant potential for mischief." *Sullivan*, 609 F.2d at 198. *See also Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979) ("A detention facility is a unique place fraught with serious security dangers. Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence.").

Obviously, ordinary Wisconsin citizens (those persons who have not been convicted of a criminal offense) have a property interest in whatever money (United States currency) they might lawfully possess. But

Mr. Anderson is *not* an ordinary Wisconsin citizen: he has been convicted of some sort of undisclosed criminal conduct; as a result, he is lawfully imprisoned at a Wisconsin correctional institution.

It is well-settled that "[l]awful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen, a 'retraction justified by the considerations underlying our penal system.'" *Wolff v. McDonnell,* 418 U.S. 539, 555, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974) (quoting *Price v. Johnston,* 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948)). It is equally well-settled that courts must be mindful of the unique problems in operating correctional facilities, and that wide-ranging deference must be accorded to officials in the adoption and execution of policies and practices they believe necessary to preserve internal order. *Mendoza v. Miller,* 779 F.2d 1287, 1292 (7th Cir.1985), *cert. denied,* 476 U.S. 1142, 106 S.Ct. 2251, 90 L.Ed.2d 697 (1986). The Supreme Court has emphasized that "[c]entral to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves." *Wolfish,* 441 U.S. at 546–47, 99 S.Ct. at 1878 (quoting *Pell v. Procunier,* 417 U.S. 817, 823, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974)).

Implicit in Mr. Anderson's claim that he was deprived of property without due process of law is his belief that he secured some sort of property interest in his money, his status as a prisoner notwithstanding. The court must look to Wisconsin state law to determine whether Mr. Anderson had a property interest, right or entitlement that is protected by the due process clause. *See Board of Regents v. Roth,* 408 U.S. 564, 571, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972).

For these purposes, the applicable state law is found in the prison regulations which may create *or* withhold such a constitutionally protected right *or* interest. *See Kentucky Department of Corrections v. Thompson,* 490 U.S. 454, 465, 109 S.Ct. 1904, 1911, 104 L.Ed.2d 506 (1989); *Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864,

871, 74 L.Ed.2d 675 (1983). Here, the previously cited provisions of the Code plainly represent an attempt to withhold from prison inmates any "property right" they might ostensibly claim in United States currency—for which they have no legitimate use, but many illegitimate ones. The evils that may be occasioned by the presence of money inside a prison are irrefutable. Thus, the court is satisfied that depriving an inmate of his so-called "right" to possess money is reasonable and necessary to prevent those evils—to preserve internal order and to uphold legitimate security concerns. *See Wolfish,* 441 U.S. at 554, 99 S.Ct. at 1882 (stating that "due process rights of prisoners ... are not absolute; they are subject to reasonable limitation or retraction in light of the legitimate security concerns of the institution").

The court has located but one case where the summary seizure and confiscation of money found in the possession of a prison inmate was found to have violated the due process clause. *Sell v. Parratt,* 548 F.2d 753 (8th Cir.), *cert. denied,* 434 U.S. 873, 98 S.Ct. 220, 54 L.Ed.2d 152 (1977). In *Sell,* the confiscation was not subject to later administrative review, and it was not possible for the inmate to recover the money once it had been seized. The court conceded that "no one questions the right of a state to forbid its convicts to have money in their possession while undergoing confinement." *Sell,* 548 F.2d at 758. However, the case turned on the fact that the state had no legal basis to confiscate money in the possession of an inmate. There was no provision in state law authorizing prison officials to effect such a confiscation—a "forfeiture," as it was called; the authority for the "forfeiture" was simply a prison *policy.*

In any event, *Sell,* which predated the Supreme Court's *Bell v. Wolfish* decision, stands alone against an impressive array of cases denying due process challenges to the authority of prison officials to deprive prison inmates permanently of money found in their possession. *See Baker v. Piggott,* 833 F.2d 1539, 1540 (11th Cir. 1987), *cert. denied,* 487 U.S. 1241, 108 S.Ct.

2918, 101 L.Ed.2d 949 (1988); *Harris v. Forsyth,* 735 F.2d 1235, 1236 (11th Cir. 1984); *Hanvey v. Blankenship,* 631 F.2d 296, 297 (4th Cir.1980); *Sullivan,* 609 F.2d at 198; *Kimble v. Department of Corrections,* 411 F.2d 990 (6th Cir.1969).

Upon consideration of these authorities, the prison regulations providing for the summary disposition of money as contraband are reasonable and lawful. *See* Wis.Admin.Code §§ DOC 303.10, DOC 303.42 (Apr. 1990). Under those regulations, Mr. Anderson, an inmate in a Wisconsin correctional institution, did not even arguably have a protected property interest in the money that was confiscated by prison officials—nor would he in any other item designated as "contraband." *See Lyon v. Farrier,* 730 F.2d 525, 527 (8th Cir.1984) (noting that a prison inmate "cannot seriously argue" that he has a protected property interest in contraband destroyed as such by prison officials). Mr. Anderson's claim to have "lawfully received" the money from "an outside source" changes nothing; the questionable veracity of that claim aside, *any* money in the possession of an inmate is contraband—*regardless* of how it is received. Because Mr. Anderson had no protected property interest in the contraband money, the due process clause is simply not implicated by the confiscation of that money by prison officials. *See Lyon,* 730 F.2d at 527.

■ But that does not end the matter. There is some authority for the proposition that Mr. Anderson's claim should instead be construed as a challenge to his "conditions of confinement"—a claim that the Code's restrictions on the type of materials he may possess are violative of the Eighth and Fourteenth Amendments. *See Lowery,* 521 F.Supp. at 432. However, it can be noted at the outset that the court of appeals for the seventh circuit has thought it "obvious" that "prison officials may, as a condition of confinement, establish rules and regulations concerning the possession of property by inmates." *Ford v. Schmidt,* 577 F.2d 408, 410 (7th Cir.1978), *cert. denied,* 439 U.S. 870, 99 S.Ct. 199, 58 L.Ed.2d 181 (1978).

Viewing Mr. Anderson's claim as a challenge to his conditions of confinement, the question is whether the retraction of a prison inmate's ostensible "right" to possess money, by §§ DOC 303.10 and 303.42, reasonably relates to a legitimate penological objective. *See Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987); *Wolfish,* 441 U.S. at 554–55, 99 S.Ct. at 1882; *Pell,* 417 U.S. at 822–23, 94 S.Ct. at 2804. For the reasons previously noted, neutralizing the security threat posed by the presence of money inside a prison is unquestionably a legitimate penological objective.

It is entirely reasonable for prison officials, under the authority of § DOC 303.42 of the Code, to effect summarily a permanent confiscation (a "forfeiture") of money found in the possession of an inmate. The choice of the sanction of permanent confiscation over the alternative sanction of temporary dispossession is reasonable because "[o]therwise it will always be profitable in the long run for inmates to attempt to smuggle cash into the prison, for they would never totally lose it." *Lowery,* 521 F.Supp. at 433.

The court finds that there is no arguable basis in law for Mr. Anderson's action seeking redress under 42 U.S.C. § 1983. Accordingly, his petition for leave to proceed in forma pauperis will be denied under 28 U.S.C. § 1915(d).

## ORDER

Therefore, IT IS ORDERED that Mr. Anderson's petition for leave to proceed in forma pauperis be and hereby is denied.

IT IS ALSO ORDERED that without further order this order shall ripen into a final judgment dismissing the action if Mr. Anderson fails to pay the required filing fee within thirty days from the date of this order.