Linley E. Pearson, Atty. Gen. by Kermit R. Hilles, Deputy Atty. Gen., Indianapolis, Ind., for defendants.

**Duane A. GUFFEY, Plaintiff,**

v.

**Helga TRAGO, John or Jane Doe, E.M. Lauderdale, Jane Doe, Defendants.**

**No. S 82–461.**

United States District Court, N.D. Indiana, South Bend Division.

Oct. 7, 1983.

## MEMORANDUM AND ORDER

SHARP, Chief Judge.

This case was filed pursuant to 42 U.S.C. § 1983 by a former inmate at the Westville Correctional Center in Westville, Indiana. The defendants are employees of the Indiana Department of Correction. Jurisdiction of this court over the claim is predicated on a federal question under 28 U.S.C. §§ 1331, 1343. The matter is presently before this court on cross-motions for summary judgment.[1]

In accord with *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir.1982), the following paragraph was prominently set forth in defendants' Motion for Summary Judgment:

A memorandum in support and affidavits are attached hereto and incorporated herein by reference. Rule 56(e) provides in part "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response,

---

1. Plaintiff filed his motion for summary judgment with supporting memorandum on May 5, 1983. On July 21, 1983, the defendants filed

their motion for summary judgment, complete with supporting memorandum and nine affidavits.

by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate shall be entered against him." Factual assertions contained in the attached affidavits will be accepted as true by the Court in the absence of affidavits or other material filed by plaintiff contradicting the assertions.

To date, plaintiff has filed nothing in response to defendants' motion.[2]

Plaintiff, Duane A. Guffey, a former state prisoner, brought this action pursuant to 42 U.S.C. § 1983 against two named individuals and two unknown and unnamed officials employed at the Westville Correctional Center in the mail room and business office alleging violations of his federally protected rights while he had been confined at that institution. Plaintiff specifically alleges violation of his First and Fourteenth Amendment rights to "unfettered access to the court(s) and to correspond freely with the courts without unjustified censorship, delaying and unnecessarily impeding his out-going legal mail." As noted above, plaintiff has moved for summary judgment and the defendants have filed a cross-motion for summary judgment.

On or about June 30, 1982 the plaintiff received a Motion to Remove Domicile of Minor Children from Michigan which was filed in the Monroe Circuit Court by his former wife, Pamela Elaine (Guffey) Lamb. Mrs. Lamb stated that her new husband was moving to California to accept employment there and sought permission of the court to take the children of her marriage with Guffey with them to California. The hearing on this matter had been set for July 2, 1982. The plaintiff apparently went to the law library to obtain assistance in responding to Mrs. Lamb's petition. An answer to the petition was prepared and the petitioner alleges that it was placed in the outgoing mail pouch on July 1, 1982 and that the letter was sent to the business office rather than the mail room to be mailed as certified mail. Plaintiff states that he did not intend for the letter to be sent by certified mail. On July 19, 1982 the plaintiff was notified that he needed to sign a remittance slip for certified mail being held by the business office. The plaintiff alleges that this was the first time he became aware that the letter had not been mailed on July 1. When the business office learned that the letter was not to go by certified mail it was placed in the regular mail.

Outgoing mail from the Westville Correctional Center law library is placed in a mail pouch. Letters to be sent by noncertified mail are placed in the mail pouch by inmate workers. In the case of certified mail the inmate workers attach certified mail slips and remittance slips to the mail and the law library supervisor then signs the remittance slip before the letter is put in the pouch. The directors of the three complexes at Westville must also sign the remittance slips for certified mail. The law library supervisor takes outgoing certified mail from inmates housed in the General Services Complex (GSC) to the office of the GSC complex director. Certified mail from the other two complexes is sorted at the mail room and sent to the appropriate complex director. At this time plaintiff was apparently housed in the General Services Complex. From the Complex Director the certified mail goes to the Assistant Superintendent for Programs and then to the Trust Fund Section of the Business Office to be checked to ensure that the inmate has sufficient funds in his account to cover the cost of certified mail. All certified mail from any source goes through the same procedure. When letters arrive at the Trust Fund section the remittance slips may be

---

**2.** Plaintiff's failure to respond to defendants' motion and admonition is not surprising. In literally hundreds (if not thousands) of prisoner petitions this court has addressed over the past decade, it has become readily apparent that inmates tend to show a marked lack of interest in pursuing their § 1983 claims once they have been released from incarceration. Plaintiff here is no longer incarcerated.

attached or the remittance slip may arrive later.

Plaintiff's letter did arrive at the business office without a remittance slip. It is unclear from the pleadings how this letter came to be sent to the business office. The letter was placed aside to be processed when the remittance slip arrived. When no remittance slip arrived, an employee of the Trust Fund Department made some inquiries and was informed that the letter was not intended to be sent as certified mail. The letter was then sent out immediately.

The attachments to the complaint establish that plaintiff filed an internal grievance regarding this incident in which he requested a:

> Written reprimand to the person or persons responsible and a three day suspension without pay, also a written assurance that this type of incident will not occur again and my mail will not be held up without my written permission. I also request a letter be sent to the court by the complex director and the superintendent explaining why my response to the petition was late. I will supply the address as needed.

The grievance was investigated and while the investigator was unable to determine how the letter came to be sent to the business office it was concluded that it apparently was the result of some accident or a clerical error on the part of the institution. A letter was sent to the Monroe Circuit Court, as plaintiff had requested.

The materials submitted by the defendants establish that plaintiff's mail was not censored and that the defendant did not intentionally delay or impede this mail. The delay was the result of negligence. The relevant facts for the purposes of the cross-motions for summary judgment are that plaintiff's letter to the Michigan Cir-

cuit Court was delayed when the letter was mistakenly sent to the business office even though plaintiff did not intend that the letter be sent by certified mail. Based on these uncontroverted facts the defendants are entitled to summary judgment.

There was admittedly a delay which may have resulted in prejudice to the plaintiff if it be assumed *arguendo* that the letter would have arrived at the court in time for the July 2 hearing if it had gone out in the non-certified mail on July first. However, there is no allegation that this was an intentional act on the part of the defendants, or any other official, and the materials submitted by the defendants establish that it was not intentional.

The general rule has long been that negligent actions do not ordinarily state a claim under the civil rights acts and that an intentional act on the part of a defendant is generally necessary to state a claim under § 1983. *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).[3] It is true that the Supreme Court of the United States did hold in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), that mere negligence may be sufficient to state a claim for deprivation of one's property rights. However, it is equally true that there is no uniform answer to the question whether mere negligence is sufficient to state a claim under § 1983 for nonproperty, i.e., liberty interest claims. 451 U.S. at 533, 101 S.Ct. at 1911; see also, *Juncker v. Tinney,* 549 F.Supp. 574 (D.Md. 1982); *Riley v. Johnson,* 528 F.Supp. 333 (E.D.Mich.1981); *Watson v. McGee,* 527 F.Supp. 234 (S.D.Ohio 1981); *Eberle v. Baumfalk,* 524 F.Supp. 515, 519 (N.D.Ill. 1981); *Haygood v. Younger,* 527 F.Supp. 808 (E.D.Cal.1981); *Peery v. Davis,* 524 F.Supp. 107 (E.D.Va.1981). One must, therefore, look to the nature of the right

---

**3.** *Estelle v. Gamble* dealt with an Eighth Amendment medical claim grounded on a tort theory of negligence rather than the First and Fourteenth Amendment claims presented here. Irrespective of the question whether the right claimed is a substantive one, it is clear that due process requires only a *reasonable* access to the courts, and reasonable restrictions imposed

on mailing privileges (even to courts) may be acceptable. *Ford v. Schmidt,* 577 F.2d 408 (7th Cir.1978). Here, the court is not confronted with an intentional restriction of a prisoner's right of access to the courts, but a merely negligent delay in the mailing of a letter. Such an isolated incident cannot rise to the level of a constitutional deprivation.

involved to determine if negligence states a cause of action under § 1983. 451 U.S. at 548, 101 S.Ct. at 1919 (Powell, J., concurring in result).

■ This case deals with allegations of denial of access to the courts under the First Amendment and the equal protection clause of the Fourteenth Amendment, not with loss of property under the due process clause. As Justice Powell stated in his concurring opinion in *Parratt v. Taylor:*

> The central question in this case is whether *unintentional* (Emphasis in original) but negligent acts by state officials, causing respondent's loss of property, are actionable under the Due Process Clause. In my view, *this question requires the Court to determine whether intent is an essential element of a due process claim, just as we have done in cases applying the Equal Protection Clause* [2] (emphasis added) and the Eighth Amendment's prohibition of "cruel and unusual punishment." [3] The intent question cannot be given "a uniform answer across the entire spectrum of conceivable constitutional violations which might be the subject of a § 1983 action," *Baker v. McCollan,* 443 U.S. 137, 139–140, 99 S.Ct. 2689, 2692–2693, 61 L.Ed.2d 433 (1979). Rather, we must give close attention to the nature of the particular constitutional violation asserted in determining whether intent is a necessary element of such a violation. *Parratt v. Taylor,* 451 U.S. at 548, 101 S.Ct. at 1919.

As Justice Powell noted in his concurrence, the courts have determined that proof of intent or purpose is necessary to show a violation of the equal protection clause. *See, e.g., Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 263, 97 S.Ct. 555, 562, 50 L.Ed.2d 450 (1977); *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976); *Almond v. Davis,* 639 F.2d 1086 (4th Cir.1981).

None of the cases cited by the plaintiff in support of his Motion for Summary Judgment stand for the proposition that negligent acts on the part of prison, or other officials, entitle a plaintiff to recovery on

an equal protection claim. In *Henriksen v. Bentley,* 644 F.2d 852 (10th Cir.1981), the case primarily relied on by plaintiff, the facts were not sufficiently developed to allow a determination on a question of negligence, as opposed to an intentional act, to be made. This is one of the factors which resulted in the cause being remanded to the district court for further proceedings.

The facts in *Henriksen* were that an inmate alleged that he had "mailed a certified letter containing 'legal mail' to the clerk of a state trial court. This letter was received by the post office ... [which] ... apparently twice notified the clerk's office of the letter. However, the clerk's office failed to pick up the letter and it was subsequently returned to Henriksen." 644 F.2d at 853. The inmate sued the clerk and judge, under § 1983. Both of the defendants were dismissed by the district court as a result of a motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure based on "judicial immunity, and upon the further ground that the action was frivolous and devoid of merit." 644 F.2d at 853. The Circuit Court affirmed the dismissal of the judge but remanded the case as to the clerk, saying "[i]n light of the state at which the action was dismissed, the allegations in Henriksen's complaint must be accepted as true. Viewed in this light we cannot say that no rational argument ... can be made to support the allegations of the complaint." 644 F.2d at 854.

The facts in this case are easily distinguishable from *Henriksen.* That case was dismissed pursuant to a F.R.Civ.P. 12(b) motion. The Tenth Circuit's conclusion that the plaintiffs' allegations must be accepted as true and that the cause should not have been dismissed unless it was clear that plaintiff could not prevail under any theory is the appropriate legal standard. Here the cause is before the court on cross-motions for summary judgment and the facts are more fully developed. Because of the stage at which *Henriksen* was decided it was unclear whether or not there had been an intentional act on the part of the clerk which resulted in his material not having been filed with the state court. Henriksen's letter was sent by certified mail and

received by the post office which twice notified the clerk's office of the letter, yet the clerk failed to pick it up. Having been alerted to the existence of the letter it is conceivable, in the absence of an affidavit or other evidence from the Clerk, that the Court could assume that the clerk made a conscious and intentional decision not to pick up the letter. If this were the case then Henriksen's right of access to the courts may have been denied. Thus, in those circumstances, the Tenth Circuit was justified in concluding that a motion to dismiss was inappropriate and that the cause should be remanded to determine whether the failure to pick up the letter was intentional or negligent. If, on remand, the facts established that the failure to pick up the letter resulted from negligence then, of course, the cause must be dismissed because, as previously noted, negligence does not state a claim under the equal protection clause. *Almond v. Davis, supra.*

In *Almond* the Fourth Circuit specifically held that an accidental or non-intentional denial of access to the Courts (viz., failing to put an inmate's name on the list to obtain counsel) did not violate an inmate's federally protected rights while a "purposeful denial" would violate his rights. The facts in *Almond* are that Almond requested legal assistance and, pursuant to state law, the Superintendent ordered that his name be placed on the list to see the "statutory attorney" for assistance. Almond did not see the attorney for six months. There was a factual dispute over whether Almond's name was accidentally omitted from the list due to an error or oversight. The Fourth Circuit remanded the case for resolution of this question, stating that:

If, in fact, Almond's name was placed on the attorney's list, the delay of six months would warrant the conclusion that there was a purposeful denial of the plaintiff's constitutional rights. On the other hand, *if the plaintiff's name was omitted from the list as a result of mere clerical oversight, the conclusion of the district judge on this point would be justified.* (Emphasis added) 639 F.2d at 1089.

Applying the rationale of *Almond* to this case the implications are clear. If the transfer of the letter to the business office was accidental, "a result of mere clerical oversight," then there has been no violation of plaintiff's equal protection rights or right of access to the courts. The materials submitted by the defendants, which are uncontroverted by the plaintiff, establish that the delay was indeed the result of a clerical error rather than a conscious intentional act on the part of any defendant.

Thus, in this case, there was no conscious or intentional decision or act to prevent plaintiff's letter from being sent to the Michigan trial court. The letter was mistakenly sent to the business office for processing as certified mail but no employee intentionally sent it there to delay the letter and the personnel at the business office had no way of knowing that a mistake had been made at the time the letter arrived at the business office.

For the foregoing reasons the defendants are entitled to summary judgment. Accordingly, the defendants' motion for summary judgment is hereby GRANTED in their favor, and plaintiff's motion for summary judgment is hereby DENIED.

SO ORDERED.