Spencer HARRIS, Plaintiff-Appellant,

v.

James GREER, Dwight Brockmeyer, and Clarence Cochran, Defendants-Appellees.

No. 83–2575.

United States Court of Appeals, Seventh Circuit.

Submitted April 19, 1984.

Decided Dec. 18, 1984.

Spencer Harris, Menard, Ill., for plaintiff-appellant.

Patricia Rosen, Asst. Atty. Gen., Chicago, Ill., for defendants-appellees.

Before BAUER, CUDAHY, and POSNER, Circuit Judges.

POSNER, Circuit Judge.

The plaintiff, Harris, an inmate of the Illinois state prison at Menard, filed this suit under 42 U.S.C. § 1983 against the warden and two members of the prison's Assignment Committee (which oversees assignment of inmates to jobs within the prison), alleging that the conditions of his confinement violate the Fourteenth Amendment in a variety of respects. The district court dismissed the action on the defendants' motion to dismiss, but discussed only some of the issues raised by the complaint. We agree with the court's resolution of those issues and for the reasons stated by it, but must consider the issues it did not discuss.

■ With respect to two of these issues—whether the defendants violated Harris's constitutional rights by confiscating five homemade paper Indian heads having a total value of $100, and by allowing members of an inmate gang to harass him —Harris's complaint must fail for want of any allegation that the defendants were personally responsible for the confiscation and the harassment. Defendant Greer, the warden of Menard, is of course the superior of whoever it was that confiscated Harris's property and failed to protect him from the gang (assuming these things actually occurred—which for purposes of this appeal we must assume since the complaint was dismissed on a motion made under Fed.R.Civ.P. 12(b)(6), but there is no concept of supervisor strict liability under section 1983. See, e.g., *Schultz v. Baumgart,* 738 F.2d 231, 238–39 (7th Cir.1984); *Wolf-Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir.1983); cf. *Monell v. New York City Department of Social Services,* 436 U.S. 658, 691–94, 98 S.Ct. 2018, 2036–37, 56 L.Ed.2d 611 (1978).

■ The last issue is more troublesome. Harris alleges that he

has repeatedly asked for a White cell mate to keep from having to cell with a gang member, which has been denied. They are either classified as homosexuals or transferred to another gallery. Plaintiff has requested a clerks job when there is an opening and have been turned down. Integration is allowed in General Population with no classification, but segregation is practiced in the Protective Custody Unit. Defendants Greer et al. are aware of this.

Although an inmate has of course no constitutional right to the cellmate or job of his choice, Harris's statement, read liberally as it must be since it is the pro se pleading of an uneducated prisoner, charges that the prison has a policy of segregating black from white inmates, in both cell and job assignments, in the Protective Custody Unit. (The character of this unit is not disclosed by the record, but presumably it is intended for inmates who feel menaced by other inmates.) A policy of deliberate racial segregation of prisoners would raise serious questions under the equal protection clause of the Fourteenth Amendment. See, e.g., *Madyun v. Thompson,* 657 F.2d 868, 874 (7th Cir.1981); *Thomas v. Pate,* 493 F.2d 151, 155 (7th Cir.), vacated on other grounds, 419 U.S. 813, 95 S.Ct. 288, 42 L.Ed.2d 39 (1974). And presumably the warden would be responsible for the policy and therefore answerable to Harris in this suit under section 1983.

■ Although we cannot conclude at this early stage of the proceeding that the

allegation of deliberate racial segregation is correct, neither can we say that the complaint fails to state a claim for which relief could be granted; and it was therefore error to dismiss the action on the pleadings. We can, however, take judicial notice of the fact that many prison gangs are organized along racial lines, see *United States v. Silverstein*, 732 F.2d 1338, 1341 (7th Cir.1984); and Menard's Protective Custody Unit may, for all we know, contain gang members—as indeed is implied by Harris's allegations. If so, then simply as an unintended, undesired byproduct of trying to separate gang members, the prison authorities might have made cell assignments that have produced a situation where blacks and whites are rarely, perhaps never, assigned to the same cells. Or maybe the prison authorities would think it imprudent, if gang activity were rampant in the prison, to force an inmate, against his will, to share a cell (perhaps especially in a protective-custody unit) with someone of a different race. Racial separation brought about by policies founded exclusively on a bona fide, colorblind concern for the safety of prisoners in our nation's dangerous prisons does not violate the equal protection clause. "[P]rison authorities have the right, acting in good faith and in particularized circumstances, to take into account racial tensions in maintaining security, discipline, and good order in prisons and jails." *Lee v. Washington*, 390 U.S. 333, 334, 88 S.Ct. 994, 995, 19 L.Ed.2d 1212 (1968) (concurring opinion); see also *Hudson v. Palmer*, —— U.S. ——, 104 S.Ct. 3194, 3198, 82 L.Ed.2d 393 (1984) (dictum). But whether this precept is applicable to this case, or whether Harris is correct in claiming that the defendants have engaged in deliberate and unjustified racial discrimination, are questions in the first instance for the district court, to which this case must be returned for further proceedings on the charge of racial discrimination. In all other respects the judgment is affirmed.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.