James ARMSTRONG, Plaintiff,

v.

Michael LANE, et al., Defendants.

No. 89-3171.

United States District Court,
C.D. Illinois,
Springfield Division.

Aug. 16, 1991.

944

James Armstrong, pro se.

Phillip McQuillan, Carol J. Barlow, Asst. Attys. Gen., Springfield, for defendants.

## OPINION

RICHARD MILLS, District Judge:

Plaintiff is a "Circuit Rider."

This is a civil rights action in which Armstrong, a state prisoner, challenges the constitutionality of the Illinois Department of Corrections' "Circuit Rider" program. That process is an arrangement in which difficult-to-control inmates are transferred

from segregation unit to segregation unit among the various state prisons.

In short, summary judgment for defendants.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Herman v. National Broadcasting Co., Inc.*, 744 F.2d 604, 607 (7th Cir.1984), *cert. denied*, 470 U.S. 1028, 105 S.Ct. 1393, 84 L.Ed.2d 782 (1985). "[I]n determining whether factual issues exist, a reviewing court must view all the evidence in the light most favorable to the non-moving party." *Black v. Henry Pratt Co.*, 778 F.2d 1278, 1281 (7th Cir. 1985). However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no 'genuine' issue for trial." *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359 (7th Cir.1988).

## BACKGROUND

Armstrong alleges the following facts, which will be accepted as true for purposes of this motion: On February 23, 1989, he was found guilty of certain disciplinary infractions at the Centralia Correctional Center. As a result of the disciplinary proceedings (and his prior institutional history), he was placed on the "circuit rider" program. The plaintiff received no notice of the placement, nor has he been informed whether or when he will be granted regular inmate status.

As a consequence of the plaintiff's circuit rider status, he is frequently transferred from one state correctional facility to another, without notice or hearing. Circuit riders are confined to their cells some twenty-four hours a day, six days a week; they are only allowed one shower and one hour of "yard" privileges per week; their visits are restricted and frustrated by the frequent transfers (which also impede the delivery of mail); circuit riders frequently lose property or find that it has been damaged *in transit;* they are denied work and rehabilitative opportunities, as well as televisions and radios; circuit riders must use plasticware instead of silverware, and the utensils are taken by force if not returned after meals.

The plaintiff further charges that medical staffers will not assist circuit riders unless those inmates are accompanied by a correctional officer. He also claims that he has trouble getting assistance from law clerks and that his legal materials have, on occasion, been intentionally confiscated and destroyed. Additionally, the plaintiff states that the tactical teams who deal with circuit riders sometimes use excessive force.

## I.

The plaintiff first claims that the disciplinary proceedings which directly resulted in his placement in the circuit rider program were constitutionally deficient. The plaintiff alleges no *Wolff* violation. Rather, he states that the disciplinary report provided the incorrect rule number for the offense of dangerous contraband. The court finds, however, that the minor technical error did not deny him due process.

*Wolff v. McDonnell*, 418 U.S. 539, 563–67, 94 S.Ct. 2963, 2978–80, 41 L.Ed.2d 935 (1974) requires notice of the charges, an opportunity to respond and to call witnesses, and a written summary of reasons for the action taken. The U.S. Supreme Court went on to state that "[p]art of the function of notice is to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact." *Id.* at 564, 94 S.Ct. at 2978. The disciplinary report the plaintiff received in the case at bar satisfied *Wolff.*

Although the disciplinary report noted a violation of Rule Number 104 (insolence) rather than 304 (dangerous contraband), the issuing officer wrote "Dangerous Contraband" next to the incorrectly cited rule number. The report further set out the date, time, and other facts detailing the officer's discovery of a 6–inch shank concealed in the plaintiff's segregation cell. The report was certainly adequate to enable the plaintiff to identify the factual charges and to prepare a defense against those charges. There is no indication that the plaintiff believed that he had been accused of insolence and mistakenly marshalled a defense against that charge. The inconsequential error on the disciplinary report, which was corrected at the hearing, did not implicate the Due Process Clause.

## II.

 The plaintiff also contests two prior disciplinary proceedings. Armstrong alleges that he was "set up by officials who used false informants" in conjunction with an October 6, 1988 conduct report at the Logan Correctional Center. However, an allegation of fabricated charges does not state a constitutional claim where due process is afforded. *Hanrahan v. Lane,* 747 F.2d 1137, 1141 (7th Cir.1984). Here, the plaintiff received full due process: notice of the charges, an opportunity to respond (the plaintiff refused to attend the hearing), the right to call witnesses (none were requested), and a written statement of the reasons for the disciplinary action taken. The defendants further state, without contradiction, that the plaintiff refused to attend the October 12, 1988, disciplinary hearing as well. The plaintiff voluntarily waived his right to appear before the adjustment committee to contest both disciplinary reports. He cannot now claim a due process violation.

## III.

 The court further finds that the plaintiff had no right to a hearing or any other procedures with respect to prison officials' decision to place him on the Circuit Rider program. First, due to the absence of regulations concerning the program, the court finds that the plaintiff had no protected interest in not being a circuit rider. Furthermore, the undisputed facts show that the plaintiff poses a great security risk and requires close supervision, thus justifying placement in the tightly-controlled program.

The plaintiff has been recognized from the outset of his incarceration as an inmate requiring heightened security measures "to protect him and other inmates in [prison]." The plaintiff had received death threats since testifying against Black Disciple gang members. The plaintiff has also repeatedly stated his willingness to kill any perceived enemies. Additionally, the plaintiff has been classified as an escape risk.

 The appropriateness of the plaintiff's placement in the circuit rider program cannot be seriously questioned in light of his extensive criminal history and lack of institutional adjustment. The defendants have provided three accordion folders of documents chronicling the plaintiff's astounding disciplinary record. Even while confined in the restrictive environment of the circuit rider program, the plaintiff has managed to commit abundant disciplinary infractions. In fact, several of his offenses have led to successful prosecution of the plaintiff on various criminal charges. Because of the plaintiff's well-documented and continuing incorrigibility, he plainly requires close supervision. The court will defer to prison officials' professional judgment that placement of the plaintiff in the circuit rider program was necessary and appropriate. *See Caldwell v. Miller,* 790 F.2d 589 (7th Cir.1986); *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1978).

### "CIRCUIT RIDER"

Turning, then, to the plaintiff's specific challenges to the Circuit Rider program itself, the court finds no deprivations of constitutional magnitude.

 The Eighth Amendment prohibits punishments which "involve the unnecessary and wanton infliction of pain."

*Gregg v. Georgia,* 428 U.S. 153, 171, 96 S.Ct. 2909, 2924, 49 L.Ed.2d 859 (1976). However, "[t]o the extent that [prison] conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). "[T]he conditions of imprisonment ... do not reach even the threshold of constitutional concern until a showing is made of 'genuine privations and hardship over an extended period of time.' " *Duran v. Elrod,* 760 F.2d 756, 759–60 (7th Cir. 1985), *quoting Bell v. Wolfish,* 441 U.S. 520, 542, 99 S.Ct. 1861, 1875, 60 L.Ed.2d 447 (1979). The conditions of confinement the plaintiff has been forced to endure in the Circuit Rider program are not so barbarous as to offend the Eighth Amendment.

■■■■■■ The plaintiff has no constitutional right to be free from transfers. A prison inmate has no liberty or property interest in remaining in a particular institution. *See Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *see also Shango v. Jurich,* 681 F.2d 1091, 1098 (7th Cir.1982). A plaintiff may be transferred for any constitutionally permissible reason or for no reason at all. *Meachum,* 427 U.S. at 225, 96 S.Ct. at 2538. Prisoners are not entitled to a hearing or other procedural due process with respect to transfer decisions. *Shango,* 681 F.2d at 1098. This court is also unwilling to find that transfers can amount to "cruel and unusual punishment" due merely to their frequency. The plaintiff's complaint thus fails to state a claim with respect to the frequency of his transfers.

■■■■ Losses and delays of the plaintiff's *mail* due to his numerous transfers, while understandably frustrating, also fail to rise to the level of a constitutional violation. Delays, unfortunately, are unavoidable because the plaintiff's mail will often reach an institution after he has been moved to another facility. Prison officials should nevertheless take steps to ensure that mail is forwarded to the frequently-transferred inmates, rather than returned to the sender. The prisons' inspection of incoming

and outgoing mail, moreover, has long been recognized as a legitimate security measure. *See, for example, Bach v. People of the State of Illinois,* 504 F.2d 1100, 1102 (7th Cir.1974), *cert. denied,* 418 U.S. 910, 94 S.Ct. 3202, 41 L.Ed.2d 1156 (1974).

It is important to note that the plaintiff has not shown that the mishandling of his mail prejudiced any litigation. *See Richardson v. McDonnell,* 841 F.2d 120, 122 (5th Cir.1988); *Guffey v. Trago,* 572 F.Supp. 782 (N.D.Ind.1983). Although the plaintiff made the unsupported allegation in his complaint that his legal mail had, on unspecified occasions, been confiscated, read, or destroyed, the plaintiff clarified in his deposition that his mail had been subject only to delays. In any event, the plaintiff does not indicate how the seizure of any legal mail has adversely affected any lawsuit. The plaintiff is not entitled to relief for the unintended mishandling of his mail.

The same reasoning holds true of the purported denial of legal assistance and of *access to the law library:* the plaintiff has not shown how he was harmed by the alleged lack of adequate legal resources. The court observes that the plaintiff's pleadings are replete with legal citations, indicating that he was, in fact, able to obtain legal materials. The plaintiff has also brought several lawsuits in the Central District of Illinois, apparently without any obstacle from the prisons in which he has been confined. Regardless, because the plaintiff has not shown prejudice to his litigation, his claimed denial of access to the courts is without substance.

The defendants' policy of *charging for photocopies* also passes constitutional muster. The Seventh Circuit Court of Appeals has repeatedly held that inmates are not necessarily entitled to free photocopies. *Gibson v. McEvers,* 631 F.2d 95, 98 (7th Cir.1980); *Jones v. Franzen,* 697 F.2d 801, 803 (7th Cir.1983). Moreover, the plaintiff has not stated any facts indicating how the DOC's photocopy policy has impeded his access to the courts.

■■■■ The *suspension of telephone privileges* also fails to implicate the Constitu-

tion. Departmental Rules state that "telephone privileges shall be granted to the committed person *in accordance with his institutional status.*" Ill.Admin.Code, tit. 20, Section 525.150(a) (1987) (emphasis added). According to the affidavit of Hill Correctional Center's record office supervisor, the plaintiff has remained in "C" grade status at all times relevant to this action. Section 504.130(a)(3) dictates that "Committed persons in 'C' grade shall receive no privileges except yard and commissary." Consequently, the plaintiff is not entitled to telephone privileges.

■ For the same reasons, the plaintiff has no *right to possess audio-visual equipment*, another "privilege", so long as he remains in disciplinary status. Furthermore, the plaintiff has no constitutional entitlement to art supplies, containers, silverware, and other items of personal property, particularly in light of his extraordinary disciplinary history. All of the articles mentioned by the plaintiff can be used as weapons or tools to assault correctional officers; in fact the defendants' exhibits reveal that the property confiscation order was a consequence of an attack the plaintiff had made using a plastic bottle. In addition, the fact that the plaintiff must eat with *plastic utensils* and drink from styrofoam cups fails to implicate the Constitution. Safety and security concerns justify the denial of property deemed by prison officials to pose the potential for misuse.

The plaintiff further complains that due to his frequent transfer, *visitors* sometimes encounter difficulties in arranging to see him. The defendants cannot help this unfortunate and unintended consequence of the plaintiff's circuit placement. The plaintiff concedes that he has not actually been denied visitors, but rather that he is sometimes housed too far away for family members to make the trip to see him. Furthermore, the court will not second-guess prison officials' decision to keep a correctional officer in the room when the plaintiff has visitors. In light of the plaintiff's disciplinary history, security concerns justify such a practice. Contrary to the plaintiff's argument, there is no basis for a finding that prison officials employ arbitrary visitation procedures to "punish" circuit riders. The complaint fails to state a claim regarding the plaintiff's right to visitation.

The plaintiff's "maximum segregation" status also warrants the *use of restraints* during visits, and whenever the plaintiff is out of his cell. According to Departmental Rules,

> Handcuffs, security belts and/or leg irons may be used to restrain any committed person when: (1) A person ... in disciplinary segregation is moved within the facility, (2) A Committed person is transported outside the facility, or (3) Determined by the Chief Administrative Office to be necessary to security.

Prison officials, therefore, have unfettered discretion to use restraints for purposes of security and control. This court will not question the defendants' decision to cuff the plaintiff when he is outside of his cell.

■ The plaintiff is also provided with an adequate number of *showers* per week to satisfy the Eighth Amendment. The Seventh Circuit Court of Appeals has held that one shower a week for inmates in segregation is constitutionally sufficient. *Davenport v. DeRobertis*, 844 F.2d 1310, 1317 (7th Cir.1988), *cert. denied*, 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988). As stated in that opinion, "any inmate in segregation who wants to keep as clean as a free person can wash himself daily, or if he wants hourly, in the sink in his cell." *Davenport*, 844 F.2d at 1316. Notwithstanding the plaintiff's dissatisfaction with one shower per week, he is constitutionally entitled to no more.

■ Nor is the plaintiff impermissibly denied the opportunity to *exercise*. Generally, inmates confined in segregation for ninety or more consecutive days should be allowed to exercise outside their cells for at least five hours per week. *Davenport, supra*, 844 F.2d at 1315. Here, however, the plaintiff was only granted one hour of out-of-cell exercise per week. Institutional Directives state:

> Inmates [in segregation] shall be allowed to spend at least one hour per day, five days per week for recreation outside of

*their room unless security or safety considerations dictate otherwise. In these instances, the inmates shall be offered the minimum of one hour of recreation per week outside of their room.* Institutional Directive 05.01.005, "Confinement and Segregation" (emphasis added); *see also* Ill.Admin.Code Tit. 20, Section 504.620(p) (1988). *Davenport* specifically contemplates that particularly troublesome inmates in segregation may be denied five hours per week outside their cells if legitimate penological concerns so dictate. *Davenport*, 844 F.2d at 1315.

United States Magistrate Philip Frazier of the U.S. District Court for the Southern District of Illinois conducted a bench trial regarding the constitutionality of the conditions relating to the circuit rider program and considered the issue of out-of-cell exercise.[1] In his memorandum and order entering judgment in favor of the defendants, Magistrate Frazier stated:

> There is no evidence that [the plaintiff] cannot exercise inside his cell. Many aerobic and other exercises may be performed in a very small space. He receives regular medical care and appears healthy and well-nourished.

The court will not second-guess prison officials' judgment that the plaintiff's disciplinary problems and potential for escape weigh against permitting him greater freedom outside his cell.

■■■■ The plaintiff further complains that, as a circuit rider, he is not allowed to hold a job. However, there is no constitutional *right to work* in prison. *Garza v. Miller,* 688 F.2d 480, 485 (7th Cir.1982), *cert. denied,* 459 U.S. 1150, 103 S.Ct. 796, 74 L.Ed.2d 1000 (1983); *Harris v. Greer,* 750 F.2d 617, 618 (7th Cir.1984). Moreover, the Constitution does not require prison authorities to provide educational, rehabilitative, or vocational programs, in the ab-

sence of conditions rising to a violation of the Eighth Amendment. *Id.* The fact that the plaintiff is unable to work does not state a cause of action under 42 U.S.C. § 1983.

The plaintiff also fails to state facts which support an Eighth Amendment medical claim. The plaintiff has made no showing of any harm resulting from *medical procedures* for circuit riders. The bureaucratic precautionary measure mandating that circuit riders must be accompanied to the health care unit by a correctional officer does not raise an inference of deliberate indifference. To the contrary, the plaintiff reported in his deposition that at least one institution, medical staffers made periodic checks of circuit riders throughout the day and night.

■■■■ The plaintiff's general and conclusory assertion that tactical teams sometimes use *excessive force* against circuit riders cannot survive summary judgment. The plaintiff has failed to state any facts indicating how any of the named defendants were involved in the alleged constitutional violation; nor has he provided any other details of a specific instance where excessive force was used.[2] The court notes that tactical teams are called only when a problem arises.

> The management by a few guards of large numbers of prisoners, not usually the most gentle or tractable of men and women, may require and justify the occasional use of a degree of intentional force. Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.

*Freeman v. Branche,* 695 F.2d 485, 492 (7th Cir.1982), *cert. denied,* 463 U.S. 1214, 103 S.Ct. 3553, 77 L.Ed.2d 1400 (1983), quoting *Johnson v. Glick,* 481 F.2d 1028,

---

**1.** The plaintiff did not inform this court that he had previously litigated nearly identical claims, an ongoing problem this court has encountered with the plaintiff.

**2.** In his response to the defendants' motion for summary judgment, the plaintiff states that he has two cases pending which concern prison officials' allegedly excessive use of force. The

two actions were initiated at least two years apart and stem from apparently isolated incidents. The plaintiff may pursue those claims in the separate lawsuits. The record does not support a finding that there is some statewide policy endorsing excessive force against circuit riders.

1033 (2nd Cir.1973), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). The plaintiff has raised no triable Eighth Amendment use-of-force claim.

Finally, the plaintiff complains that he was subjected to a *visual strip search* at the Vandalia Correctional Center upon arriving at that institution. Many courts have considered and upheld the constitutionality of visual rectal searches of prisoners. *See, e.g., Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Campbell v. Miller,* 787 F.2d 217, 228 (7th Cir.1986), *cert. denied,* 479 U.S. 1019, 107 S.Ct. 673, 93 L.Ed.2d 724 (1986) (upholding visual body cavity searches following visits to law library); *Goff v. Nix,* 803 F.2d 358, 364–65 (8th Cir.1986), *cert. denied,* 484 U.S. 835, 108 S.Ct. 115, 98 L.Ed.2d 73 (1987) (upholding strip searches upon release from the maximum security unit); *Rickman v. Avaniti,* 854 F.2d 327 (9th Cir.1988) (upholding visual body cavity searches of all segregation unit inmates leaving their cells); *Hay v. Waldron,* 834 F.2d 481, 486 (5th Cir.1987) (upholding strip searches of inmates in segregation); *Arruda v. Fair,* 710 F.2d 886 (1st Cir.1983), *cert. denied,* 464 U.S. 999, 104 S.Ct. 502, 78 L.Ed.2d 693 (1983) (also upholding routine visual body cavity searches of maximum security inmates leaving or returning to their cells). Well established case law confirms that the plaintiff had neither a Fourth nor Eighth Amendment right to be free from strip searches.

### CONCLUSION

In summary, even viewing the record in the light most favorable to the plaintiff, the court finds, as a matter of law, that the plaintiff's placement in the Circuit Rider program did not violate his constitutional rights.

The plaintiff has accumulated literally hundreds of disciplinary reports, even since his "maximum security" classification. Institutional order and security warrant the special treatment of the plaintiff in light of his unruly and intractable behavior. The Circuit Rider program, a "last resort" de-

signed to control "the worst inmates in the Illinois prison system,"[3] does not subject the plaintiff to conditions of confinement so brutal as to implicate the Eighth Amendment.

Accordingly, the defendants' motion for summary judgment is ALLOWED, summary judgment is entered in favor of the defendants and against the plaintiff, and the parties are to bear their own costs.

Case CLOSED.

**3.** *See* Smith, "State's Prisons Test the Limit," *Chicago Tribune,* March 31, 1991, at 13.