42 F.3d 1391
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
James ARMSTRONG, Plaintiff-Appellant,
v.
Leo MEYER, et al., Defendants-Appellees.
 No. 93-2298.
 United States Court of Appeals, Seventh Circuit.
 Submitted Nov. 21, 1994.*
Decided Dec. 1, 1994.
 
 Before FAIRCHILD, FLAUM and KANNE, Circuit Judges.
 
 ORDER
 
 1
 James Armstrong appeals the district court's grant of summary judgment in favor of the defendants in this action brought under 42 U.S.C. Sec. 1983. Armstrong was a state prisoner confined to the Danville and Sheridan Correctional Centers at all times relevant to this action. He alleged that his constitutional rights were violated by the defendants[1] who are correctional officers and medical personnel employed by, or associated with, the Danville and Sheridan Correctional Centers. On appeal, Armstrong alleges that he was denied effective access to the courts through confiscation of legal papers and denial of legal assistance and basic writing supplies, that he was denied medical treatment, and that he was subject to living conditions constituting cruel and inhumane punishment due to unsatisfactory heating of the segregation unit at the Danville Correctional Center.
 
 
 2
 On appeal, Armstrong argues that genuine issues of material fact exist making summary judgment by the district court inappropriate. We disagree and AFFIRM the district court's judgment for the reasons stated in the attached order.
 
 ATTACHMENT
 UNITED STATES DISTRICT COURT
 CENTRAL DISTRICT OF ILLINOIS
 
 3
 James Armstrong, Plaintiff,
 
 
 4
 vs.
 
 
 5
 Leo Meyer, et al., Defendants.
 
 No. 92-2157
 
 6
 Filed May 5, 1993.
 
 ORDER
 
 7
 The plaintiff, a state prisoner, has brought this civil rights action pursuant to 42 U.S.C. Sec. 1983. The plaintiff claims that the defendants, officials at the Sheridan and Danville Correctional Centers, have violated the plaintiff's constitutional rights by interfering with his access to the courts and by subjecting him to cruel and unusual conditions of confinement. The cause was transferred to this court by the U.S. District Court for the Northern District of Illinois. This matter is before the court for consideration of the defendants' dispositive motions. For the reasons stated in this order, the motions will be allowed.
 
 
 8
 The defendants' motion to dismiss that portion of the complaint relating to the use of leg irons must be granted. The plaintiff already has filed a suit concerning correctional policy regarding the use of restraints on "circuit riders." The court (Richard Mills, U.S. District Judge), rejected the plaintiff's challenge, finding that "prison officials had unfettered discretion to use leg restraints for purposes of security and control."[1] The plaintiff is collaterally estopped from re-raising the same issue in a successive lawsuit. See, e.g., Cannon v. Loyola University of Chicago, 784 F.2d 777 (7th Cir.1986), cert. denied, 479 U.S. 1033 (1987).[2] The plaintiff's claim regarding the use of leg irons will be dismissed as a matter already adjudged.
 
 
 9
 The defendants also have moved for summary judgment on all remaining claims; that motion, too, will be allowed. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Herman v. National Broadcasting Co., Inc., 744 F.2d 604, 607 (7th Cir.1984), cert. denied, 470 U.S. 1028 (1985). "[I]n determining whether factual issues exist, a reviewing court must view all the evidence in the light most favorable to the non-moving party." Black v. Henry Pratt Co., 778 F.2d 1278, 1281 (7th Cir.1985).
 
 
 10
 However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no 'genuine' issue for trial." Mechnig v. Sears, Roebuck & Co., 864 F.2d 1359 (7th Cir.1988).
 
 FACTS
 
 11
 The plaintiff is a state prisoner, confined at the Danville and Sheridan Correctional Centers at all times relevant to this action. The plaintiff was incarcerated at the Sheridan Correction Center from June 28, 1991, through August 8, 1991, and from October 23, 1991, through November 4, 1991. The Sheridan defendants are Robert Acosta, Assistant Warden of Operations, James Irving, Corrections Administrator, William Hollein, Library Manager, and Edwin Carey, a staff physician.
 
 
 12
 The plaintiff was confined at the Danville Correctional Center from September 13, 1991, through October 11, 1991, and again from November 13, 1991, through January 29, 1992. The Danville defendants are Warden George DeTella, Early Laster, Assistant Warden of Programs, John Russian, Chief Engineer, Sue O'Neill, Health Care Administrator, Dr. Melvin Ehrhardt, and Nurse Steve Combs. The plaintiff also sues Leo Meyer, Michael O'Leary, and Michael O'Neal, all deputy directors of the Illinois Department of Corrections (D.O.C.), as well as Raymond Quick, Superintendent of D.O.C. School District # 428.
 
 I. Access to the Courts
 A. Sheridan Claims
 
 13
 On August 17, 1989, the plaintiff filed a lawsuit entitled, Armstrong v. Lane, et al., Case Number 89-3171, in the U.S. District Court in Springfield. On June 14, 1991, the defendants filed a motion for summary judgment. The plaintiff filed an opposing brief on July 1, 1991. On August 16, 1991, the court (Richard Mills, U.S. District Judge) entered judgment in favor of the defendants and terminated the case.
 
 
 14
 In July, 1991, the plaintiff gave the defendant Hollein a civil complaint to have typed and photocopied. The name of the lawsuit was Armstrong v. Fairman, et al. When the documents were returned to him, the plaintiff was unhappy with the way the complaint had been typed. The plaintiff gave the defendant Irving the typed version and requested that it be retyped. Evidently, the documents were not returned to the plaintiff. The allegations raised in the case at bar, however, contain the claims the plaintiff planned to raise in Fairman.
 
 B. Danville Claims
 
 15
 On December 16, 1991, the plaintiff filed a motion for access to the library in a Vermilion County circuit court case entitled Armstrong v. Neal. The plaintiff asserted that prison officials had seized his legal materials. On January 28, 1992, the court required the parties to brief the motion. The court has not yet made a ruling on the plaintiff's motion.
 
 
 16
 On September 10, 1991, the plaintiff filed a petition for rehearing on his motion for leave to appeal in People v. Armstrong, a criminal case. On December 4, 1991, the Illinois Supreme Court denied the plaintiff's petition.
 
 II. Medical Claims
 A. Sheridan Claims
 
 17
 The defendant Carey, a Sheridan staff physician, examined the plaintiff on several occasions between June 28, 1991 and August 8, 1991. On August 7, 1991, a Dr. Rooney, Sheridan's optometrist, examined the plaintiff. After examining the plaintiff, Rooney referred him to a specialist. The next day, an ophthalmologist examined the plaintiff and found that his peripheral vision was deteriorating.
 
 
 18
 On August 8, 1991, the plaintiff was transferred to the Dixon Correctional Center. When the plaintiff returned to Sheridan on October 23, 1991, he underwent a complete examination by Carey.
 
 
 19
 On October 29, 1991, the plaintiff was taken to the institutional infirmary for emergency treatment after he had an altercation with correctional officers. Carey examined the plaintiff and found that he had sustained bruises and contusions on his extremities and back. Carey prescribed Flexeril, a muscle relaxant, and Darvon Analgesic, a pain reliever, to alleviate the plaintiff's symptoms. On November 4, 1991, the plaintiff left the Sheridan Correctional Center.
 
 B. Danville Claims
 
 20
 During the plaintiff's tenure at Danville, the plaintiff had numerous consultations with the defendant Ehrhardt, an institutional physician.
 
 
 21
 On September 23, 25 and 27, 1991, as well as on October 2, 1991, the defendant Combs, a nurse, withheld the plaintiff's prescribed medicine because the plaintiff failed to comply with procedures for distribution of medicine. On September 27, 1991, the defendant Combs issued the plaintiff a disciplinary ticket charging him with violations of prison rules 206 (Intimidation or Threats) and 304 (Insolence). After a hearing on the matter, a prison Adjustment Committee found the plaintiff guilty of the charges.
 
 
 22
 On October 2, 1991, the defendant Combs issued the plaintiff a second conduct report, this time charging him with Assault, Threats or Intimidation, and Insolence. On that same date, the defendant Ehrhardt discontinued all of the plaintiff's medications due to the plaintiff's purportedly "antisocial" conduct towards Combs. The plaintiff appeared before a prison Adjustment Committee, whose members found him guilty of the charges. The plaintiff was housed at another institution from October 11, 1991, through November 13, 1991.
 
 
 23
 On December 30, 1991, Danville's resident optometrist examined the plaintiff and referred him to an ophthalmologist. The ophthalmologist examined the plaintiff on January 7, 1992, and found that the plaintiff did not have glaucoma.
 
 III. Conditions of Confinement at Danville
 
 24
 Since the construction of the Danville Correctional Center, the segregation unit has experienced heating problems. The Department of Central Management continues to look into various remedies to cure the heating problems.
 
 DISCUSSION
 I. Access to the Courts
 
 25
 The parties agree that the Constitution guarantees prison inmates a right to meaningful access to the courts. Bounds v. Smith, 430 U.S. 817, 821 (1977). The defendants concede, furthermore, that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Id. at 828.
 
 
 26
 However, in order to establish a triable claim that the defendants deprived him of access to the courts, the plaintiff must show prejudice. Shango v. Jurich, 965 F.2d 289 (7th Cir.1992). Such an allegation must be more than merely conclusory; a complaint is inadequate if it "offers no specific facts to support these allegations--no court dates missed; no inability to make timely filings; no denial of legal assistance to which he was entitled; and no loss of a case which could have been won." Martin v. Davies, 917 F.2d 336, 340 (7th Cir.1990), cert. denied, 111 S.Ct. 2805 (1991). Furthermore, the plaintiff must show that the purported interference was intentional. Kincaid v. Vail, 969 F.2d 594 (7th Cir.1992). Here, the plaintiff has not met his burden.
 
 A. Sheridan
 
 27
 The plaintiff has failed to demonstrate that he was deprived of access to the courts while at the Sheridan Correctional Center. The plaintiff first contends that he was unable to obtain writing materials or legal assistance to oppose a summary judgment motion in his unsuccessful case, Armstrong v. Lane. However, the plaintiff did, in fact, file a thirteen-page responsive brief. In its order granting summary judgment the court explicitly noted that the plaintiff's pleadings were "replete with legal citations...." The plaintiff lost his case because he did not have a triable constitutional claim, and not because of any acts or omissions on the part of the defendants.
 
 
 28
 The plaintiff further alleges that certain defendants either confiscated or incorrectly typed documents pertaining to a lawsuit the plaintiff intended to file, Armstrong v. Fairman. Even assuming that the defendants improperly seized the plaintiff's legal materials, the plaintiff has shown no prejudice: he is currently prosecuting the same allegations and causes of actions which were raised in that contemplated lawsuit.
 
 
 29
 The plaintiff also complains that photocopying charges at Sheridan were excessive. However, inmates do not have a right to free photocopying. Rather, prison authorities are permitted to make a "reasonable attempt" to balance prisoners' right of access to the courts with prison budgetary concerns. Gaines v. Lane, 790 F.2d 1299, 1308; Bach v. Coughlin, 508 F.2d 303, 307-08 (7th Cir.1974). Regardless, the plaintiff's prison trust fund ledgers reveal that the plaintiff was not charged for the alleged copies.
 
 B. Danville
 
 30
 The plaintiff contends that on December 2, 1991, the defendant DeTella ordered staff to confiscate legal documents from the plaintiff. The documents allegedly pertained to Armstrong v. Neal, 91-MR-7, a case pending in the Vermilion County Circuit Court. The plaintiff filed a motion for relief in the state court; that motion is still pending. Again, even assuming that the defendants are guilty of having illegally confiscated the plaintiff's legal materials, the plaintiff has failed to show any adverse rulings or other detriment caused by the defendants' alleged misconduct.
 
 
 31
 The plaintiff also faults the defendants for his lack of success in People v. Armstrong, 89-CF-43, a criminal matter. The plaintiff claims that the Illinois Supreme Court denied his petition for rehearing of his appeal because he was unable to find cases to support his position. However, the defendants have submitted a copy of the plaintiff's petition as an exhibit. The petition contains legal citations in support of the plaintiff's position; the supreme court, in denying the petition, noted that it had considered and rejected the plaintiff's arguments. The plaintiff's assertion that the defendants caused him to lose his case is wholly conclusory.
 
 
 32
 In short, the plaintiff has failed to show how actions or omissions on the part of prison officials at either institution has prejudiced any pending or contemplated lawsuit. To the contrary, the plaintiff's heavy caseload (eight cases in the U.S. District Courts for the Central District of Illinois since 1989 and many others in the circuit courts and in other federal jurisdictions) belies the plaintiff's assertion that he has been deprived of access to the courts.
 
 II. Medical Claims
 
 33
 In order for a prison inmate to prevail under 42 U.S.C. Sec. 1983 on a claim of medical mistreatment, the inmate must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). The standard of deliberate indifference was recently reaffirmed in Hudson v. McMillian, 112 S.Ct. 995, 1000 (1992) ("society does not expect that prisoners will have unqualified access to health care"); see also Wilson v. Seiter, 111 S.Ct. 2321 (1991). The indifference to medical needs must be substantial; inadequate treatment due to negligence, inadvertence or differences in judgment between an inmate and medical personnel do not rise to the level of constitutional violations. Estelle; Hughes v. Joliet Correctional Center, 931 F.2d 425, 428 (7th Cir.1991) (if the claim is merely medical malpractice, it should be brought in state court). Under these precepts, the plaintiff has no triable Eighth Amendment claim.
 
 A. Sheridan
 
 34
 The plaintiff alleges that while he was at Sheridan, the defendant Carey refused to send him to a bone specialist for his back problems (the plaintiff had sustained minor injuries in an altercation with correctional officers), or to a neurologist for his headaches. However, Carey states in his affidavit that he did not believe that the plaintiff's complaints warranted treatment by a specialist. Carey did conduct an "extensive examination" and treated the plaintiff himself, prescribing Midrin for the plaintiff's headaches, as well as Flexeril (a muscle relaxant) and Darvon Analgesic (a pain reliever) for the plaintiff's back aches. The plaintiff's disagreement over prescribed treatment actually received is not actionable under the civil rights statutes. Benson v. Cady, 761 F.2d 335, 341 (7th Cir.1985).
 
 
 35
 The plaintiff also charges that Carey refused to refer him to a University of Illinois ophthalmologist who had previously performed surgery on the plaintiff, and with whom the plaintiff had been satisfied. Carey instead scheduled the plaintiff to see an optometrist and then another, different ophthalmologist. The plaintiff had no constitutional right to choose his doctor or his course of treatment. The ophthalmologist recommended treatment by the University of Illinois eye specialist "only if necessary;" furthermore, Carey no longer was responsible for the plaintiff's medical care since the plaintiff was transferred from Sheridan the same day he was examined by the ophthalmologist.
 
 B. Danville
 
 36
 The plaintiff sues Danville Correctional Center physician Melvin Ehrhardt for failing to treat the plaintiff while he was in segregation. However, Ehrhardt states in his affidavit, and the plaintiff's medical records confirm, that Ehrhardt met with the plaintiff numerous times during the plaintiff's two stints at Danville, and that the plaintiff received continual medical care.
 
 
 37
 The plaintiff claims that the defendant Combs gave the doctor "false information" in order to get the plaintiff's medication discontinued. However, Combs' uncontroverted affidavit shows that the plaintiff was denied medication because he refused to follow very simple required procedures. Combs states that if an inmate has a history of being volatile, prison policy requires him to put both hands outside his chuckhole when receiving medication. This procedure ensures that the inmate will not throw anything at the dispensing nurse. The plaintiff did not receive his medication on four dates because he refused to comply with those procedures.
 
 
 38
 On two of those occasions, the plaintiff verbally abused Combs, refused to show his hands, threw a cup of liquid at Combs, and spat at him.[3] The plaintiff himself is responsible for going without medicine because he refused to follow required procedure, and because he failed to conduct himself in an appropriate manner.
 
 
 39
 On October 2, 1992, the defendant Ehrhardt re-examined the plaintiff and discontinued his prescribed medications altogether, in light of the plaintiff's unacceptable behavior. [At the time, the plaintiff was taking Dilatin for his seizures, Inderal for his blood pressure, Midrin for his headaches and Triple Antibiotic for his cuts and pimples.] According to Ehrhardt, none of the plaintiff's conditions requiring medication were "life-threatening."
 
 
 40
 The court is profoundly disturbed by the withholding of medicine as a semi-punitive measure. The denial of necessary medical care would unquestionably violate the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). However, the doctor's actions do not reflect a degree of wantonness tantamount to knowing willingness that the plaintiff would be harmed by the denial of medication. Duckworth v. Franzen, 780 F.2d 645, 654 (7th Cir.1985), cert. denied, 479 U.S. 816 (1986).
 
 
 41
 Ehrhardt's affidavit indicates that the plaintiff did not have a "serious" need for the discontinued drugs. In considering whether a medical need is "serious," the court considers such factors as the severity of the medical problem, the potential for harm if medical care is denied or delayed, and whether any such harm actually resulted from the lack of medical attention. See Burns v. Head Jailer of LaSalle County Jail, 576 F.Supp. 618, 620 (N.D.Ill.1984); see also Thomas v. Pate, 493 F.2d 151, 158 (7th Cir.1974). Here, the plaintiff does not allege that he suffered any ill effects when his medication was withdrawn; furthermore, the plaintiff presumably had the opportunity to see an new doctor when he was transferred to another prison on October 11, 1991, less than two weeks later. The court is particularly reluctant to find a constitutional violation since the plaintiff's own, persistent misbehavior triggered Ehrhardt's drastic action.
 
 
 42
 In sum, the plaintiff's voluminous medical records reveal that he received comprehensive medical care for his myriad complaints at both institutions. The plaintiff has no triable constitutional cause of action regarding his dissatisfaction with his treatment, especially where the plaintiff himself was responsible for the problems that arose. The defendants' level of care was not "so clearly inadequate as to amount to a refusal to provide essential care." See Thomas v. Pate, 493 F.2d 151, 158 (7th Cir.1974), cert. denied, 419 U.S. 813 (1974).
 
 III. Conditions at Danville
 
 43
 Finally, the plaintiff maintains that heating problems in Danville Correctional Center's segregation unit caused him to suffer the unnecessary and wanton infliction of pain. The court disagrees.
 
 
 44
 In assessing whether prison conditions constitute cruel and unusual punishment, the court examines the totality of the conditions of confinement. DeMallory v. Cullen, 855 F.2d 442, 445 (7th Cir.1988). The Eighth Amendment requires prison officials at least to maintain minimal sanitary and safe prison conditions, see DeMallory, 855 F.2d at 445, as well as to provide minimal exercise, showers, clothing, and sanitary eating conditions. Wells v. Franzen, 777 F.2d 1258 (7th Cir.1985). However, "[p]risons are not required to provide and prisoners cannot expect to receive the services of a good hotel." Harris v. Fleming, 839 F.2d 1232, 1235 (7th Cir.1988).
 
 
 45
 The unsatisfactory heating system at Danville does not rise to the level of constitutional magnitude. The defendants admit that construction defects, as well as destructive inmates, have caused heating problems in the institution's segregation unit. However, the plaintiff admits that space heaters are provided and the defendants state that temperatures taken in the individual segregation cells, even during periods of severely cold weather, have been "within acceptable tolerances" [i.e., "rarely, if ever below 62 degrees and generally considerably warmer"].
 
 
 46
 The court rejects the plaintiff's argument that steel-reinforced cells are appreciably, or at least unconstitutionally, colder. The defendants state that the reinforced cells, which were constructed "when a number of incorrigible inmates destroyed cells that were not reinforced," are heated in the same manner as all other cells in the segregation unit. Even if metal is cooler to the touch than other building materials, the court is unpersuaded that the plaintiff's placement in steel-reinforced cells constituted cruel and unusual punishment.
 
 
 47
 As the defendants also point out, the plaintiff has failed to satisfy the subjective component necessary for Eighth Amendment liability. See Jackson v. Duckworth, 955 F.2d 21 (7th Cir.1992). The defendants have made, and continue to make, efforts to correct the heating problems in the segregation unit. No reasonable person could find that the defendants have acted with the subjective intent to cause the plaintiff suffering. Furthermore, the court again notes that the plaintiff might enjoy more comfortable surroundings if he simply refrained from engaging in his typically destructive and disorderly behavior, which compels his placement in the segregation unit's most spartan cells.
 
 
 48
 In sum, no material facts are in dispute,[4] and the court concludes that the defendants are entitled to judgment as a matter of law. The record demonstrates that the defendants have not deprived the plaintiff of meaningful access to the courts, have not acted with deliberate indifference to his serious medical needs, and have not subjected him to cruel and unusual conditions of confinement. Because no reasonable person could find in favor of the plaintiff, the defendants' motion for summary judgment will be granted.
 
 
 49
 IT IS THEREFORE ORDERED that the defendants' motion to dismiss (docket # 45) is allowed. The plaintiff's claim relating to the use of leg irons is dismissed with prejudice as a matter already adjudged pursuant to Fed.R.Civ.P. 12(b)(6).
 
 
 50
 IT IS FURTHER ORDERED that the defendants' motion for summary judgment (docket # 56) is allowed. The Clerk of the court is directed to enter judgment in favor of the defendants and against the plaintiff pursuant to Fed.R.Civ.P. 56. The case is terminated. The parties are to bear their own costs.
 
 
 51
 /s/ Harold A. Baker
 
 HAROLD A. BAKER
 UNITED STATES DISTRICT JUDGE
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and record
 
 
 [1]
 Armstrong named fourteen defendants. The Sheridan Correctional Center defendants are: Robert Acosta, Assistant Warden of Operations; James Irving, Corrections Administrator; William Hollein, Library Manager; and Edwin Carey, a staff physician. The Danville Correctional Center defendants are: Warden George DeTella, Early Laster, Assistant Warden of Programs, John Russian, Chief Engineer, Sue O'Neill, Health Care Administrator, Dr. Melvin Ehrhardt, and Nurse Steve Combs. Armstrong also sues Leo Meyer, Michael O'Leary, and Michael O'Neal, all deputy directors of the Illinois Department of Corrections, and Raymond Quick, Superintendent of the Department of Corrections School District # 428
 
 
 [1]
 Under the so-called "Circuit Rider" program, difficult-to-control inmates are transferred from segregation unit to segregation unit among the various state prisons. Armstrong v. Lane, 89-3171. The court's order rejecting the plaintiff's various challenges to the circuit rider program is reported at 771 F.Supp. 943 (C.D.Ill.1991)
 
 
 [2]
 The plaintiff argues that he is now suing for injuries caused by the restraints, and not merely that the use of restraints is unconstitutional. However, the plaintiff is barred from raising claims he could have raised in his previous suit. See Lee v. City of Peoria, 685 F.2d 196, 199 (7th Cir.1982); Migra v. Warren City School District Board of Education, 465 U.S. 75, 85 (1984). Furthermore, as will be discussed more fully infra, the court rejects the plaintiff's assertion that he did not have a full and fair opportunity to present his claims
 
 
 [3]
 Combs issued the plaintiff conduct reports following both incidents. Prison Adjustment Committees found the plaintiff guilty of the charges in both instances. The plaintiff alleges no denial of due process with respect to those hearings, and allegations of false disciplinary reports do not state a claim where due process is afforded. Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir.1984)
 
 
 [4]
 The plaintiff's unsupported assertion that "in reality there are many facts in dispute" is insufficient to defeat summary judgment. The plaintiff's broad and conclusory statements, in contrast to the defendants' specific statements of fact, do not create a triable issue of fact